## In re NATIONAL LOCK CO.
### No. 2727½.

District Court, N. D. Illinois, W. D.
Dec. 31, 1934.

Hall & Dusher, of Rockford, Ill., for debtor.

Edgar J. Schoen, of Chicago, Ill., for certain preferred stockholders.

Poppenhusen, Johnston, Thompson & Cole, of Chicago, Ill., and Karl C. Williams, of Rockford, Ill., for certain other stockholders.

Polk & Williams, of St. Louis, Mo., for bondholders' protective committee.

Smith & Reckhow, of Rockford, Ill., and Myer N. Rosengard, of Chicago, Ill., for certain nondepositing bondholders.

WOODWARD, District Judge.

The question to be answered is whether or not any one or all of the three classes of stockholders of debtor are materially and adversely affected by the plan proposed under section 77B of the Bankruptcy Act, as aded by Act June 7, 1934, § 1 (11 USCA § 207).

The debtor owns and operates a large manufacturing plant, carries substantial inventories and conducts extensive business, is organized under the laws of Delaware, and is licensed to do business in Illinois with its principal place of business at Rockford. Under date of February 16, 1925, debtor executed a mortgage deed of trust to the Mississippi Valley Trust Company, as trustee, conveying certain real estate together with the buildings and improvements thereon, constituting its factory buildings, together with all machinery, tools, patterns, dies, furniture and fixtures—in fact all real estate, machinery, and equipment owned or possessed by debtor—to secure its 6 per cent. serial bonds in the total amount of $2,500,000. At the time it filed its petition in this case, this bond issue had been reduced to $1,205,300. It defaulted in the payment of interest on August 1, 1932, and in the payment of serial prepayments on February 1, 1933. These defaults were uncured at the time the petition in this cause was filed. It is admitted by all parties, however, that the corporation is not insolvent within the meaning of section 77B.

There are three classes of stock: First, the A 7 per cent. cumulative preferred, of which 2,556 shares are outstanding; second, the B 6 per cent. cumulative preferred, of which 9,046¾ shares are outstanding; third, the common stock of which 23,034 shares are outstanding. The A preferred are entitled to fixed cumulative dividends payable January 1, and July 1 in each year out of the earnings, before any dividends are set apart or paid on the B preferred or the common, but shall not participate in any additional earnings. The B preferred are entitled to receive out of the net earnings fixed cumulative dividends on January 1 and July 1 in each year, before any dividends shall be set apart or paid to the common stock, and the B stock shall not participate in any additional earnings. The two series of preferred have no voting rights; all the voting power being vested in the holders of the common.

The entire mortgage debt was declared by the trustee to be immediately due and payable owing to the default.

The certificate of incorporation of the debtor, as amended, provides that no reorganization plan may be effected without the consent of each and every stockholder.

The debtor filed its petition and plan of reorganization on July 14, 1934, and alleges that its stockholders are not materially and adversely affected within the meaning of section 77B of the Bankruptcy Act, as amended. Certain stockholders have intervened and have criticized the plan in many particulars, but the main contention is that the stockholders are affected by the plan within the meaning of the section involved.

The stockholders make four main contentions: First, that the plan restricts the payment of any dividends to any class of

stockholders until the principal amount of the outstanding bonds has been reduced to $600,000, and prevents the payment of any cumulation of dividends pursuant to the provisions of the stock certificate until all of the bonded indebtedness is paid. Second, the plan provides that no dividends shall be paid on the common stock as long as there are any bonds outstanding. Third, that the debtor shall execute a supplemental trust deed in which it shall waive the equity of redemption in favor of the trustee under the mortgage deed of trust securing the bond issue. Fourth, that the plan provides for the establishment of a sinking fund and contingent interest fund out of debtor's earnings and imposes other obligations relating to the payment of its earnings into funds which are bound to result in the depletion of its working capital so its ability to operate its business will be substantially impaired, besides adopting other fiscal policies and the fixing of salaries and arranging of the management of debtor's business for many years to come.

The debtor and the bondholders' protective committee have filed separate briefs in support of the plan and in support of the contention that stockholders are not affected. They contend (1) that, inasmuch as the plan gives a ten-year extension on the bonds and grants a reduction of interest, the plan, considered as a whole, is beneficial rather than adverse to the stockholders; (2) that the stockholders have no interest in the assets of the corporation, and that the board of directors have the power to waive the equity of redemption and not the stockholders; that the equity of redemption was waived in the original mortgage, and that this waiver became effectual after the 1933 enactment of the Illinois corporation statute (Smith-Hurd. Ann. St. Ill. c. 77, § 18a), providing that corporations may in any mortgage thereafter executed waive the equity of redemption; (3) that the dividends are declared by directors and not by stockholders, so restrictions as to dividends do not affect the stockholders.

[2] The corporate structure or entity of a debtor in proceedings under 77B of the Bankruptcy Act, as amended, becomes diaphanous, and the stockholders emerge as the real parties in interest. Their interests are in the negotiation and creation of a plan of reorganization usually legally opposed and adverse to the interests of the creditors of debtor. While it may be true that the debtor would naturally propose the plan, the statute provides that creditors, and even stockholders, may under certain circumstances propose a plan. Subdivision (d), § 77B of the act (11 USCA § 207 (d) provides: "Plan of reorganization which has been approved by creditors of the debtor * * * or * * * by stockholders whose interests would be affected by the plan, provided said amount is not less than 10 per centum of any class of stock outstanding and not less than 5 per centum of the total number of shares of all classes of stock outstanding, may be proposed by any creditor or by any stockholder. * * *"

The foregoing statutory provision emphasizes the fact that stockholders are parties in interest and gives stockholders a more protected status than they had in equity reorganizations prior to the enactment of section 77B. Debtor as a corporation, with its board of directors, is the creature of the stockholders and exists for the benefit of the stockholders and is controlled by them. During the pendency of these proceedings, the debtor, while in possession, as is the case here, its directors and stockholders, lose certain powers and rights. Subdivision (c) of section 77B (11 USCA § 207 (c) provides: "While the debtor is in possession (a) its officers shall be entitled to receive only such reasonable compensation as the judge shall from time to time approve, and (b) no person shall be elected or appointed to any office, to fill a vacancy or otherwise, without the prior approval of the judge."

But the statute preserves to the stockholder substantially his right to vote and to direct the debtor in his vote, for or against a reorganization, as a substitute for or in lieu of, his right to so control the affairs of the corporation through the election of directors. Subdivision (e) of section 77B (11 USCA § 207 (e) provides that a plan of reorganization shall not be confirmed until it has been accepted by a certain percentage of creditors and "by or on behalf of stockholders of the debtor holding a majority of the stock of each class." Thereafter follow the exceptions declaring what creditors' assents are not necessary and when not necessary, and also when stockholders' assents are not necessary. The exception in reference to stockholders reads as follows: "And provided further, That such acceptance shall not be requisite to the confirmation of the plan by any stockholder or class of stockholders (1) if the

judge shall have determined either that the debtor is insolvent, or that the interests of such stockholder or stockholders will not be affected by the plan, or (2) if provision is made in the plan for the protection of the interests of such stockholder or class of stockholders in the manner provided in subdivision (b), clause (4), of this section."

It is noteworthy that here the statute uses the comprehensive word "interests," whereas in subdivision (h) of section 77B (11 USCA § 207 (h), dealing with the final confirmation of the plan, the statute uses the more restricted word "rights" as well as "interests," as follows: "Such final decree shall discharge the debtor from its debts and liabilities, and shall terminate and end all rights and interests of its stockholders, except as provided in the plan or as may be reserved as aforesaid."

Subdivision (b) of section 77B (11 USCA § 207 (b) contains a definition as follows: "No creditor or stockholder shall, for the purposes of this section be deemed to be affected by any plan of reorganization unless the same shall affect his interests materially and adversely."

The following definitions are found in Webster's New International Dictionary (2d Ed.): "Affect" being made of two Latin words, "ad" meaning "to" and "facere" meaning "to do"; to be acted upon, influenced, concerned; in Scottish law, "to lay hold of, or seize, as debtor's property." "Adverse" is defined as "having opposing interests; having interests for the preservation of which opposition is essential." "Material" is defined as "in respect to the matter, as distinguished from the form; in respect to the material cause."

Before the reorganization plan, the rights and preferences of the stockholders of the debtor, inter sese, were defined and expressed in the certificate of incorporation of the debtor and in the stock certificates. Among those rights one of the most precious was the right in the stockholders to vote for directors who would govern during their term of office and decide from time to time the fiscal and other policies of the corporation. With this right to vote, the stockholders governed the corporation. As a matter of historical development, this right in the stockholders grew with the development of democratic principles of government after the extinction of the principle of the divine right of Kings. So sacred is this right of stockholders in corporations created under the Illinois law that it is preserved in the State Constitution (article 11, § 3).

The plan proposed modifies and restricts this right of stockholders to vote in that it establishes the fiscal policies of the debtor beyond their control. This provision of the plan is for the benefit of the creditors and is adverse and in opposition to the rights and interests of the stockholders. Nor does it matter that some may think, and even the court may find, that the plan as a whole, may be "a good deal" even for the stockholders. They must have the right to vote on the matter. Subdivision (b) of section 77B (11 USCA § 207 (b) provides that "a plan of reorganization within the meaning of this section (1) shall include provisions modifying or altering the rights of creditors generally; * * * (2) may include provisions modifying or altering the rights of stockholders generally, or of any class of them, either through the issuance of new securities of any character or otherwise."

While this plan leaves the certificates in the same physical form and the shares of the same number, yet it does in effect and in substance materially modify the rights of the stockholders. It in effect rewrites and modifies the certificate of incorporation and the contract of the stockholders as expressed in the stock certificates, and is tantamount to the issuance of new securities. The definition of securities in section 77B (b), 11 USCA § 207 (b), includes "stock."

The proponents of the plan exercised the option contained in subdivision (b) to propose provisions modifying the rights of stockholders "through the issuance of new securities of any character or otherwise" (it is not mandatory that the plan shall so provide), and therefore by their own act and to satisfy the right to vote on the question. The more creditors are interested in preserving this provision, the more evident it becomes that it is adverse and in opposition to the interests of the stockholders.

While directors have the power to file a petition in bankruptcy on behalf of the corporation (In re Ann Arbor Mach. Corp. [C. C. A.] 274 F. 24), yet, when a petition is once filed under section 77B, the cause must proceed according to the statute and all safeguards set up by section 77B for the protection of creditors and stockholders and others in interest must be observed.

436

■ Furthermore, the proceedings are in equity, and the debtor must act in good faith throughout. It came into court bound by its charter in favor of its stockholders to a degree that no reorganization could be effected without the consent of every stockholder. In fairness it should permit, as far as lies in its power, the stockholders to vote upon any plan or reorganization in these proceedings. Subdivision (f), cl. (6) of section 77B of the act, 11 USCA § 207 (f) (6), provides that the judge shall confirm the plan if satisfied that "the offer of the plan and its acceptance are in good faith and have not been made or procured by any means or promises forbidden by this title."

The English Railways Companies Act of 1867, which is a reorganization statute similar to the recent amendment to our Bankruptcy Act, carries a similar provision to the one which concerns us here. It reads as follows: "The assent of none of these classes of persons need, however, be obtained where the scheme does not prejudicially affect any right or interest of such class."

Considering this language, the court in the case of In Re Neath & Brecon Railway Company, [1892] 1 Ch. 349 C. A. said: "Mr. Justice North has found, and I see no reason to doubt that he was correct, in finding, that this scheme is in the whole beneficial to the preference shareholders; but it is perfectly clear that it prejudicially affects some of their rights. * * * It appears to me to be perfectly clear from the Act that, if there is any right which is prejudicially affected, although the balance of advantage may be in favor of the class, Section 15 does not apply. * * * The object of the legislature appears to me to be very clear—Viz., that this section is not to apply in cases where there is a balance of advantage and disadvantage, but that in such cases the matter should be submitted to the shareholders, that they may determine whether in their opinion the advantages exceed the disadvantages to such an extent as to make it desirable that the statutory assent should be given to the plan."

So in the instant case, whether or not the plan as a whole may be beneficial or advantageous to the stockholders does not determine the question.

■ There is yet more. The plan provides that debtor shall execute a supplemental agreement in which it shall waive the equity of redemption in favor of the trustee under the mortgage deed of trust securing the bond issue. Equity of redemption is a valuable property right—probably the most valuable single property right the debtor possesses, since it may control its factory. The clause in the mortgage waiving this equity, at the time it was executed, was void and against the public policy of this state. The legislative enactment of 1933 to the effect that any corporation might waive such equity of redemption in any trust deed in the nature of a mortgage thereafter executed, did not make the clause in the mortgages executed in 1925 effective. This statute must be strictly construed, and, further, it is not retrospective, but prospective, in its very provision. These proceedings are brought for the relief of debtor, which relief would only be reflected for the benefit of its stockholders. Furthermore, as a matter of fact, had this equity of redemption been considered waived at the time debtor filed its petition in these proceedings, the trustee and the bondholders would probably have not conceded that the corporation was not insolvent. Further the clause in the trust deed in which the debtor agrees to execute further assurances is mainly for the purpose of keeping the trust deed a first lien and not to increase, if possible, the equitable rights of the trustee. The corporation in these proceedings cannot join with certain of the secured creditors and, on the one hand, be a Shylock demanding the penalty of the bond, and, on the other hand, be a suppliant praying for relief. Nor does it avail them that the trustee as mortgagee might have taken the rents and profits through receivership, for these proceedings were brought before there was any such sequestration of such rents and profits, and, further, this corporation must have other income besides rents and profits pledged in the trust deed. To say that all the assets of the debtor now, by reason of default, belong to the trustee under the mortgage, merely because they have been pledged as security, and that debtor and its stockholders have no rights therein, to extinguish which an adverse proceeding must be taken in some court, is not only untrue, but it assumes the premise. It assumes a completed foreclosure. It assumes the "thing accomplished," and is no assistance in deciding whose interests will be affected when the plan is completed that is now in process of formation.

■ Finally, as to all contracts existing at the time debtor filed its petition, such con-

tracts are subject to being disregarded by the judge in these proceedings, pursuant to the provisions of subdivision (b) of section 77B, 11 USCA § 207 (b), reading as follows: "Provided, That the judge shall scrutinize and may disregard any limitations or provisions of any depositary agreements, trust indentures, committee or other authorizations affecting any creditor acting under this section and may enforce an accounting thereunder or restrain the exercise of any power which he finds to be unfair or not consistent with public policy and may limit any claims filed by such committee member or agent, to the actual consideration paid therefor."

When the debtor filed its petition in these proceedings, it was possessed of all of its assets, and in control of its board of directors through its stockholders. The rights of its stockholders, both as to the corporation, its creditors, and the public generally, and also as to themselves, class by class, inter sese, were the same as they had been for years previous. The trust deed securing the bonds is in these proceedings subject to the scrutiny of the judge who may restrain the exercise of any power which he may find not consistent with public policy. The clause in the trust deed waiving the equity of redemption was void as against the public policy of Illinois when executed. To waive this right requires a new contract to be signed by the debtor, as is contemplated in the plan. Such right may now be legally waived, pursuant to the 1933 statute of Illinois: "Any corporation organized under the laws of this state, or any foreign corporation licensed to do business in this state, may, by provision in any mortgage or trust deed in the nature of a mortgage hereafter executed, waive any and all rights of redemption from sale under any order or decree of foreclosure of such mortgage or trust deed," etc. Smith-Hurd Ann. St. c. 77, § 18a, Cahill's 'Ill. Rev. Stat. 1933, c. 77, par. 18 (1).

Since such contract will take from the debtor something which it had, namely, the equity of redemption, and since a loss suffered by the corporation is immediately felt by the stockholders or reflected in the value of their stock, how can it be said that such a plan does not affect the stockholders?

Debtor is conceded to be not insolvent. The power and authority of directors to sell or mortgage all the assets of a corporation or to cause the corporation to cease doing business are much more limited and restricted where the corporation is solvent than where the corporation is insolvent.

All three classes of stockholders of the debtor corporation are held to be affected by the plan or reorganization proposed.