### In re PILSENER BREWING CO.

#### WEIFFENBACH v. McLEAN et al.
#### No. 7655.

Circuit Court of Appeals, Ninth Circuit.
Aug. 26, 1935.

64

Walter A. McClure, Wm. E. McClure, and McClure & McClure, all of Seattle, Wash. (Wm. Hickman Moore, of Seattle, Wash., of counsel), for appellant.

Schwellenbach & Gates and Robinson & Gibbon, all of Seattle, Wash., for appellees.

Before WILBUR, DENMAN, and MATHEWS, Circuit Judges.

WILBUR, Circuit Judge.

This appeal is from two orders of the District Court entered September 25, 1934, one refusing to permit appellant to withdraw his petition to reclaim certain barrels and to dismiss said petition without prejudice. The other is an order confirming and adopting as the findings of fact and conclusions of law the report of the special master filed August 18, 1934, and confirming and approving the plan of reorganization filed by the Pilsener Brewing Company of Seattle, a corporation, as debtor, June 21, 1934, in the District Court, as amended by amendment filed with the special master July 19, 1934, and in the District Court August 18, 1934.

On May 10, 1934, after an involuntary petition in bankruptcy had been filed against it, Pilsener Brewing Company of Seattle was adjudicated a bankrupt and the matter referred to Ben L. Moore, referee. On May 15, 1934, J. L. McLean was appointed receiver in bankruptcy and on May 31st was elected trustee in bankruptcy. On June 21, 1934, the bankrupt, as debtor, filed its verified petition for reorganization under section 77B of the Bankruptcy Act

approved June 7, 1934 (11 USCA § 207), and as part thereof its proposed plan of reorganization. The District Court approved the petition as properly filed, appointed McLean trustee in the debtor proceeding and referred the proceeding to the referee as special master for hearing and report.

On July 17, 1934, appellant filed with the special master his petition to reclaim certain barrels in the possession of the trustee and debtor alleging that they had been obtained by the bankrupt by fraudulent representations, and at the same time he filed his proof of debt No. 204 for the sum of $19,004.98 which claim included the difference between the purchase price of the barrels sought to be reclaimed and what appellant alleged to be their second-hand value. Appellant refused to offer any evidence in support of his reclamation petition upon the ground that neither the court in the debtor proceeding, nor the special master, had any jurisdiction to hear and determine the petition, which objection was overruled. The special master treated the petition for reclamation as a proof of debt and allowed the claim in the amount of $20,795.73, being the balance due for barrels sold by appellant to the debtor.

The appellant seeks to support his effort to withdraw his claim upon the theory that such withdrawal is analogous to a voluntary nonsuit which is permissible under the state law. The Conformity Act (28 USCA § 724), however, has no application to such a proceeding in bankruptcy. Jurisdiction over the whole matter of the estate of the bankrupt, including the claims against it, is in the bankruptcy court. It is proper in determining the plan of reorganization and the rights of the parties thereunder, to determine the rights of the appellant. If he had waived his claims against the bankrupt no one could complain of such waiver, and the withdrawal of his claim in pursuance of such waiver might well have been permitted, but it is clear from the motion to withdraw that appellant intended to maintain its claims against the bankrupt notwithstanding such withdrawal. The action of the master in refusing to permit the withdrawal is proper. His allowance of the claim of the appellant for the entire amount due on the purchase price of the barrels was all that the appellant was entitled to. There is no error in the order

of the court in respect to the attempted withdrawal of appellant's claim.

With reference to the appeal from the order confirming the plan of reorganization, the appellant claims that the plan approved by the court was not accepted in writing "by or on behalf of creditors holding two thirds in amount of the claims of each class whose claims have been allowed and would be affected by the plan" as required by subdivision (c) (1) of section 77B (11 USCA § 207 (e) (1). That the acceptance of holders of more than two-thirds of the claims affected by the plan of reorganization, both general and preferred, was evidenced in writing by the creditors or persons claiming to represent such creditors, is admitted. It is contended, however, that the authorizations were not broad enough to cover the written acceptance of the plan approved by the court, and, consequently, that the plan approved by the court was neither approved by two-thirds of the creditors affected nor by their duly authorized representatives. The question turns upon the interpretation of certain written authorizations filed with the court. It appears from the statement of the evidence that:

"About the time the petition in bankruptcy was filed debtor endeavored to make a voluntary reorganization with its creditors and during March and April 1934 obtained the signatures of creditors on two forms for such reorganization in evidence as Exhibit D and referred to as such in the master's report. The first form is for creditors holding preferred or prior claims against debtor and is:

"Believing that my interests are best conserved, as a preferred creditor of The Pilsener Brewing Co. of Seattle under the following plan, I subscribe thereto by signing below. The reorganized company shall issue to me its note, payable at the rate of fifteen per cent per month, with interest at seven per cent per annum. Said note shall be delivered to me when my claim is approved and accepted, and the monthly payments shall be made either at the Peoples Bank and Trust Company, Seattle, Washington, or at the offices of the reorganized brewing company.

"The second form is for creditors holding unsecured claims against debtor and is:

"The undersigned creditor of The Pilsener Brewing Co. of Seattle, in consideration of the execution of this claim by sixty per cent of the creditors in amount of said company, hereby assign my claim against said company to H. S. Gaunce, John P. Lycette, John P. Hartman and L. B. Schwellenbach and Gordon B. Dodd as trustees, with irrevocable powers to the majority of them to enforce or settle same, or vote the said claims at all creditors' meetings, in bankruptcy or otherwise, according to the following terms and conditions. Terms: The Pilsener Brewing Company of Seattle is to be reorganized either in its present corporate capacity or by a new and succeeding corporation, with not less than a one year 7% mortgage of $25,000.00, the total amount of which is to be used as new operating capital except so much thereof as may be necessary to purchase the assets of said company at a bankruptcy sale, 7% cumulative preferred stock equal to the amount of claims assigned under this agreement, retirable at par, plus accrued dividends out of seventy-five per cent of the company's net earnings in any year, and 10,000 shares of common stock. Creditors signatory hereto shall accept in full settlement preferred stock equal to the amount of claims plus one share of common stock for each $100.00 par value of preferred stock or fraction thereof. The company's officers and attorney agree that in event of reorganization before or after bankruptcy they will accept balance of common stock in full settlement of their claims, but do not waive their preference rights or claims in bankruptcy or receivership. Trustees hereunder are authorized in event of bankruptcy or receivership to bid amount of claims assigned hereunder on any sale of assets."

In addition thereto certain claimants were represented by attorney in fact under power of attorney in the following form: "To * * * You * * * are hereby authorized by said creditor * * * to appear for and represent said creditor and vote for said creditor in any proceedings or meetings which may be made or called in the above entitled proceeding in court, before the referee in bankruptcy or elsewhere, and particularly to vote for said creditor in the choice of a trustee of said bankrupt whenever such election be held, and to accept or in your discretion oppose confirmation of any composition offered by or on behalf of said bankrupt and to receive and receipt for any and all moneys which may be or may become payable to

said creditor therein or for or on account of said debt."

The plan of reorganization which was proposed, is as follows:

"There shall be organized a new corporation to be known as The Pilsener Brewing Co. of Washington, which at the time of its organization shall have outstanding:

"(a) A first mortgage secured by a deed of trust of all of its assets in the amount of $25,000.00, payable not less than one year from the date of the execution thereof, and bearing interest at the rate of seven per cent per annum.

"(b) There shall be authorized and outstanding preferred stock in an amount equal to the total amount of claims filed and allowed by the court in these proceedings, said preferred stock to be of a par value of $25.00 per share. The Articles of Incorporation to provide that said stock shall be entitled to cumulative preferred dividends at the rate of seven per cent per annum, and to provide that said stock shall be retirable at par, plus accrued dividends out of a fund to be created annually by depositing therein seventy-five per cent of the company's net earnings after the payment or provision for preferred dividends.

"(c) Common stock in the amount of ten thousand shares non par, which stock shall be entitled to dividends only out of twenty-five percent of the company's earnings so long as any of the preferred stock shall be outstanding.

"(d) Unsecured notes bearing interest at the rate of seven percent per annum, payable at the rate of fifteen percent per month in an amount equal to the amount accepted by the holders of preferred claims against this corporation.

"The rights of creditors to the distribution thereof under this plan of reorganization shall be as follows:

"A. *Secured Creditors*

"Secured creditors shall be entitled to retain the claims now held by them against the debtor, and have the same preferred as against the new reorganized corporation, subject to all of their rights, interests, claims and liens against the security now held by them.

"B. *Prior Creditors*

"Prior creditors shall be entitled to receive, either

"(1) Notes of the new corporation as described in subdivision (d) of the foregoing description of the capital structure of the new corporation; or

"(2) Cash in the amount of fifty per cent of their claims, to be secured from the sale of the first mortgage notes as described in subdivision (a) in the previous paragraph describing the capital structure of the reorganized corporation; or

"(3) They shall receive preferred stock in an amount equal to the amount of their claims, said preferred stock to be as described in subdivision (b) of the previous paragraph describing the capital structure of the reorganized corporation, plus one share of the common stock of the corporation for each four shares of preferred stock received by them.

"C. *Unsecured Common Claims*

"Unsecured common claims shall receive preferred stock as described in paragraph (b) of the previous paragraph describing the capital structure of the reorganized corporation, in an amount equal to the amount of their claims, plus one share of common stock as above described for each four shares of preferred stock received by them.

"D. *Stockholders Other than Officers or Trustees of the Debtor Corporation*

"The stockholders, other than officers or trustees of the debtor corporation, now owning common stock in the debtor corporation are to receive stock in the reorganized corporation in the same amounts that they now own in the debtor corporation.

"E. *Officers and Attorney for Debtor Corporation*

"The officers and attorney of the debtor corporation holding prior and common claims against the corporation are to waive their claims, and to secure in consideration therefor the total remaining common stock of the reorganized corporation."

Some changes were made in this plan of reorganization at the time of the hearing before the special master and were confirmed by the court. As to the first form wherein the holders of preferred claims against the bankrupt agreed to the acceptance of its note, in view of the fact that the proposed plan provided for such note this agreement constituted assent to the proposed plan of reorganization. The

third form expressly authorized the attorney in fact "to accept or in your discretion oppose confirmation of any composition offered by or on behalf of said bankrupt." While this authorization was executed before the passage of section 77B permitting reorganization, such reorganization was in effect "a composition by or on behalf of the bankrupt" which, by the terms of the power of attorney, the attorney in fact was authorized to accept.

The serious question in the case arises from the second form of authorization. This form authorizes the creditors' committee "to enforce or settle the same [the assigned claim] or vote the said claims at all creditors' meetings in bankruptcy, or otherwise according to the following terms and conditions:" (above quoted). The appellees contend that this is a general power to settle the claims which are assigned to the committee. If we could accept this interpretation of the assignment we would have no difficulty in sustaining the order of the trial court. We think, however, that the authority to settle and enforce the claim is modified by the phrase "according to the following terms and conditions" and that in order to authorize the committee to accept the plan of reorganization that plan must conform to the terms of the authorization. Appellees contend that the terms of the proposed plan of reorganization do conform in substance and effect to the plan contained in the authorization and the special master and the trial court so determined. It is clear, however, that there is a variance between this authorization and the plan or reorganization submitted to the court and approved by it. It must be admitted, of course, that an immaterial variance would not affect the power of the committee nor of the court to adopt the plan which was subsequently approved by the court. Such an immaterial variance we think occurred in the case at bar in that the preferred stockholders were to have the right to vote in the plan as finally approved by the court whereas nothing was said about the right to vote in the authorization to the committee. Neither is it material that this authorization was given before the passage of the amendment to the bankruptcy act authorizing the plan of reorganization, if it is sufficiently broad to cover the plan which is finally adopted. The very fact, however, that this authorization was given before the courts were authorized to permit the reorganization of bankrupt corporations, indicates the probability that there are substantial differences. The authorization to the creditors' committee was predicated upon the ability to secure the consent of 60 per cent. of the creditors to the proposed plan. The other creditors were to be taken care of from the purchase price derived from the sale of all the property of the bankrupt which was to be purchased by the committee representing 60 per cent. or more of the creditors. Payment was to be made from the $25,000 operating capital to be obtained by mortgage. The balance of that amount was to be working capital. The $25,000 procured by mortgage upon the assets of the bankrupt in the approved plan was to be used for no such purpose. This difference was material.

The appellant also points out certain other differences between the two plans, as follows:

"Under the first plan it was not specified what assets the first mortgage should cover and it was not contemplated that it should cover all of debtor's assets; whereas the second plan provides specifically that the mortgage should cover all assets of the new company.

"The amount of preferred stock under the first plan was to equal claims of creditors signatory to the plan; while under the second plan the amount of preferred stock is to equal the amount of all claims filed and allowed in the debtor proceeding.

"Under the first plan prior creditors would be given notes in the amount of their respective claims payable at the rate of 15% per month; whereas under the second plan prior creditors are to be given three different options of payment, one of which is 50% in cash.

"The first plan made no mention of secured claims, while the second plan provides that secured claims should remain unchanged so that they would thus be ahead of the $25,000.00 mortgage.

"Under the first plan unsecured creditors were to receive preferred stock at $100.00 per share in the full amount of their claims plus one share of common stock (par value not stated) for each share of preferred or fraction thereof; whereas

68

under the second plan unsecured creditors are to be given preferred stock in the full amount of their respective claims at $25.00 per share plus one share of common stock for each four shares of preferred without mention of fractional shares."

The court in ignoring these variances from the first plan was evidently of the opinion that the creditors were just as well off under the plan approved by the special master as under the plan contained in these special authorizations, but that is not a question for the determination of the court but for the parties, for their acceptance is a necessary preliminary to the order of the court. The parties did not authorize the acceptance of the plan which was finally approved by the court. Consequently the order of the court was without the necessary authority. We cannot understand why the attorneys in the case, with the plain provisions of section 77B of the Bankruptcy Act before them, endeavored to eke out authority from authorizations which were made for an entirely different purpose and which do not cover the proposed plan. The creditors are not numerous. If they were willing to accept the provisions of the plan of reorganization submitted to the court, there seems to be no reason why their written consent could not have been obtained thereto.

Appellant makes other objections to the order approving the plan of reorganization which are without substantial merit. The approval of the plan, if authorized by the necessary number of creditors, is a matter which must lie largely in the discretion of the trial court, with which discretion we should be very reluctant to interfere, and indeed would have no power to do so except in the case of plain abuse of discretion, which is not shown in the case at bar.

The order of the trial court which denies the application of the appellant for leave to withdraw his claim for reclamation of barrels is affirmed. The order which permits the plan of reorganization is reversed, with instructions to the trial court to give the parties a reasonable time within which to secure the consent of the necessary two-thirds of the creditors. If such consent cannot be secured, the court shall proceed in accordance with the applicable provisions of the Bankruptcy Act.