**DOWNTOWN INV. ASS'N v. BOSTON METROPOLITAN BLDGS., Inc.**

No. 3039.

Circuit Court of Appeals, First Circuit.

Jan. 14, 1936.

David Stoneman and Harold Horvitz, both of Boston, Mass. (Harry N. Guterman and Guterman & Guterman, all of Boston, Mass., on the brief), for appellant.

Robert G. Dodge, of Boston, Mass. (R. Ammi Cutter, of Boston, Mass., on the brief), for appellee.

Before BINGHAM and MORTON, Circuit Judges, and MORRIS, District Judge.

MORRIS, District Judge.

This is an appeal from an order of the district judge dated May 27, 1935, confirming a plan of reorganization under section 77B of the Bankruptcy Act, as added by Act June 7, 1934, § 1, 48 Stat. 912, and from certain other subsidiary orders made May 13, 1935, upon which the final order of confirmation was made.

The debtor is the Boston Metropolitan Buildings, Inc., a Massachusetts corporation owning the Metropolitan building which includes the Metropolitan Theatre, the Wilbur Theatre, and the land on which they stand.

The appellant, Downtown Investment Association, is a creditor of the debtor in the sum of $39,000, represented by first mortgage 5 per cent. bonds on the entire real estate of the debtor.

Debtor's entire bonded indebtedness is as follows:

First mortgage 5 per cent. bonds due June, 1942, $2,492,500.

Second mortgage 6 per cent. bonds due July 15, 1942, $1,106,500.

The value of the mortgaged property appears to be considerably in excess of the first mortgage indebtedness.

Because of existing defaults in the payments of interest on its outstanding bonds and the unprofitable nature of its operations, the debtor on June 23, 1934, filed its petition for reorganization under 77B of the Bankruptcy Act.

From that time on the case appears to have proceeded in the usual course of such actions. The chronology of its progress is as follows:

On June 25, 1934, an order was entered approving the petition and authorizing the debtor to continue the business until fur-

ther order of the court. On July 10, 1934, at a hearing held in accordance with the provisions of subdivision (c), clause (1) of 77B (11 U.S.C.A. § 207 (c) (1), an order was entered continuing the debtor in possession of its property and fixing September 10, 1934, as a date on or before which the claims and interests of creditors and stockholders of the debtor should be filed. It was further ordered that on September 10, 1934, or as soon thereafter as may be, the debtor shall file with the court a list of the claims and interest filed with it or prepared for it with statements of the objections, if any, which it may have to the allowance of such claims. On September 17, 1934, it was ordered that the plan of reorganization be filed by the debtor on or before October 29, 1934. On September 17, there was also filed a list of creditors and stockholders. On November 26, 1934, the debtor filed a petition for the allowance of claims and an order was entered on the same date allowing the same. There was also filed on said date the debtor's plan of reorganization. On November 28, 1934, the court made an order fixing Monday, January 7, 1935, as the date for hearing upon the debtor's plan. The debtor was ordered to give notice of such hearing by publishing a copy of the order once during the week of December 3, 1934, in the Boston Transcript and by mailing forthwith a copy of the order with a copy of the proposed plan to all known creditors and stockholders of the debtor and to counsel of record. At the hearing on January 7, 1935, the Downtown Investment Association, Inc., filed objections to the debtor's plan of reorganization alleging that it was unfair and inequitable to the holders of the first mortgage bonds. It is alleged that the value of the real property of the debtor under mortgage was of a value in excess of the mortgage debt; that it was unfair to the second mortgage bondholders and to the stockholders; and that the provisions of the plan regarding the leasing of the Metropolitan Theatre were inadequate and not a sufficient protection to the interests of the debtor corporation. Other objections were noted which it seems unnecessary to mention here.

The district judge at once referred the plan and objections thereto to Arthur Black as a special master to report as to the fairness of the plan and objections filed thereto. On February 20, the Downtown Investment Association filed a petition to intervene alleging that it had prepared and desired to propose a plan for reorganization substantially different from the debtor's plan and that it desired to propose changes in the plan filed by the debtor. On February 25, 1935, it was ordered that the appellant be allowed to intervene for the following purpose: To propose such changes and modifications in the debtor's plan as are permissible under 77B and it was ordered that in the event the appellant, pursuant to the leave conditionally granted, should propose a plan of reorganization or changes or modifications in the debtor's plan such plan or proposed changes be referred to Arthur Black. On February 28, there was filed by the appellant an offer to lease the Metropolitan Theatre upon terms substantially different from those contained in the debtor's plan, and on March 1, 1935, proposed changes in the original plan were filed. These were also referred to the special master.

On April 11, 1935, the debtor submitted amendments to its original plan which were likewise, by order of April 12, referred to the special master.

On April 17, 1935, the special master filed his report on the debtor's plan of reorganization which included the appellant's changes and modifications and the first amendment proposed by the debtor, reaching the conclusion that the plan as amended was perfectly feasible and if approved could be carried out; that it was undoubtedly fair and equitable and did not discriminate unfairly in favor of any class of creditors or stockholders. On April 26, 1935, the debtor proposed a further amendment, which is of no particular consequence in these proceedings, and filed a petition for the approval of the debtor's proposed amendment to the plan of reorganization and for the confirmation of the plan as amended. The date for the hearing thereon was fixed for May 13, 1935, on which last-mentioned date the appellant filed an objection to the amendments of April 11, and April 26, 1935, and asked that the objections filed to the original plan might be applied to the amendment and to the entire plan as amended. On May 27, 1935, at a hearing before the district judge upon the matter of the form of the decree the appellant presented 37 requests for rulings of law which the court granted "except insofar as the propositions stated in them are inconsistent with the decree substantially in the form presented

by Mr. Dodge to the extent that this afternoon I may allow a decree in that form. I will allow them also, except insofar as they may be inconsistent with such other form of decree as I may conclude to approve this afternoon."

Thereafter, on the same day, an order was entered approving the amendment of the debtor's° plan of reorganization and confirming the plan as amended.

It is to this order and to the subsidiary orders upon which it is based that the appeal is directed.

Forty-two errors are assigned, but counsel for the appellant have grouped assignments containing duplication together so that, as he states, the propositions to be discussed are as follows:

"(a) The plan of reorganization proposed in this case is not a proper plan within the meaning of section 77B.

"(b) The plan of reorganization proposed in this case does not conform to the requirements of subdivision (f), clause (1), of section 77B [11 U.S.C.A. § 207 (f) (1)].

"(c) The so-called first amendment of the plan of reorganization constituted a change of modification so materially adverse to the interests of those creditors or stockholders who had previously accepted the plan as to require the court to fix a period, after such notice as the court might direct, within which any creditor or stockholder, if he desired, might withdraw his acceptance—and as a consequence of the failure of the court, in view of this first amendment, so to fix a period the plan cannot be said to have been duly accepted as required by the provisions of subdivision (e), clause (1), of section 77B [11 U.S.C.A. § 207 (e) (1)]."

In addition to the foregoing which deal with the substantive phases of this appeal, there are the following questions of practice or procedure: (a) The scope of the hearing before the District Court and reports of the special master; (b) the propriety of approving·a plan in advance of the filing in court of the requisite acceptances.

Counsel for the appellant, in view of the decisions in the Second and Fourth Circuit Courts of Appeals, has waived the assignments of error raising the question of the constitutionality of 77B. See Campbell v. Alleghany Corp., 75 F.(2d) 947; Union Trust Co. of Maryland v. Wagner, 75 F.(2d) 256, 260; In re New Rochelle Coal & Lumber Co., 77 F.(2d) 881.

The assignments of error relating to the failure of the plan to make special provision as a separate class for holders of matured interest coupons are also waived.

A question of practice, or more properly speaking, a question of jurisdiction is raised as to whether an order confirming a plan of reorganization is reviewable by an appeal under 24a or under 24b of the Bankruptcy Act, as amended (U.S.C.A., title 11, § 47 (a, b). We hold that the proper procedure is a petition for leave to appeal under 24b and that it is within the discretion of the Circuit Court of Appeals whether such leave will be granted. Campbell v. Alleghany Corp., supra; Vitagraph, Inc., v. St. Louis Properties Corp. (C.C.A.) 77 F.(2d) 590, 594, 595; St. Louis Can Co. v. General Am. Life Ins. Co. (C. C.A.) 77 F.(2d) 598.

Appellant being in doubt is proceeding under both provisions of the statute, and as has been the practice of this court in some other cases in which the record has been printed and is before us, the petition for leave to appeal and the merits of the case have been heard at the same session of the court.

The petition for leave to appeal is granted, and the case has been heard on its merits. The question therefore is of no importance except as limiting the scope of our jurisdiction. Only the questions of law preserved by the record are before us for consideration. Detroit Trust Co. v. Union Guardian Trust Co. (C.C.A.) 65 F. (2d) 73; Cintron v. Barletta Trading Co. (C.C.A.) 70 F.(2d) 1005.

The following is a brief outline, so far as it affects this appeal of debtor's plan as originally filed: It provided for a readjustment of the first and second mortgage bond indebtedness by a release of accrued interest; and extension of maturity dates; a reduction in the rate of interest; the waiver in whole or in part of sinking fund requirements; an issue of new common stock to the bondholders and to the preferred and common stockholders upon certain defined terms; a voting trust to continue until January 1, 1950, with five voting trustees, two to represent the first mortgage bondholders, two to represent the second mortgage bondholders, and one to represent the holders of the new issue of

stock. The plan was expressly conditioned upon the execution of a lease of the Metropolitan Theatre to a subsidiary corporation of New England Theatres, the substantial terms of which had been agreed upon between the trustees of Paramount-Publix Corporation, then in the process of reorganization, and the board of directors of the debtor corporation.

It is because of the fact that the debtor's plan is expressly conditioned upon execution of the above-mentioned lease that it is claimed that it is not a proper plan within the meaning of section 77B and that it does not conform to the requirements of subdivision (f), clause (1), of said act (11 U.S.C.A. § 207 (f) (1).

Subdivision (f), clause (1), provides that the judge shall confirm the plan if satisfied that (1) "it is fair and equitable and does not discriminate unfairly in favor of any class of creditors or stockholders, and is feasible."

It is argued by the appellant that proceedings for reorganization under 77B are no more than an extension of the principle of composition agreements under section 12 of the Bankruptcy Act, as amended (11 U.S.C.A. § 30); that a plan of reorganization, like an offer in composition, is, in effect, no more than a contract between a debtor and its creditors and that before any form of proposal can be raised to the dignity of a "plan" and submitted to creditors and stockholders it must first satisfy the simplest principles of the law of contract; that the plan in this case is so indefinite, particularly with respect to the terms of the lease, that for this reason, if for no other, it must fail.

We agree with counsel for the appellant that a plan under 77B is in substance nothing more than a composition agreement between the creditors and the debtor and that it is merely an extension of section 12 of the original Bankruptcy Act with such additions and provisions as are necessary to adapt it to the complicated conditions that may arise in corporate reorganizations. Myers v. International Trust Co., 273 U.S. 380, 47 S.Ct. 372, 71 L.Ed. 692. Any plan to be sufficient should be definite and feasible in all of its general provisions before being submitted for acceptance in order that creditors and stockholders may be appraised of their exact standing if the plan is accepted and confirmed by the court. Counsel maintain that the plan in the instant case does not measure up to these requirements in that it is conditioned upon the execution of a lease which is indefinite · in some of its terms and unenforceable as a contract. See National Surety Company v. Coriell, 289 U.S. 426, 53 S.Ct. 678, 77 L.Ed. 1300, 88 A.L.R. 1231.

The proposed lease as set forth in debtor's plan of reorganization is as follows:

"The plan as outlined above is conditioned upon the execution of a lease, the substantial terms of which have been agreed upon between the trustees of the Paramount-Publix Corporation and the board of directors of the debtor and are as follows: (a) A subsidiary corporation of New England Theatres, Inc., is to take a lease of the Metropolitan Theatre for ten years, the annual rental to be 12½% of the first $1,100,000 gross admission receipts less admission tax, 15% of the next $400,000 and 17½% of all over $1,500,000; the minimum guaranteed rental to be $130,000 for the first year and $156,000 for the next four years. For the last five years of the term of the lease the minimum guaranteed rental and the percentages of the gross admissions less admission tax shall be readjusted by arbitration, but at figures not less than those provided for the second year of the lease.

"(b) At the option of the receivers of Olympia Theatres, Inc., or the reorganized company, the lease is to be transferred and assigned from the above described lessee to the Olympia receivership estate or to the reorganized company.

"(c) The lessee is to have the right to terminate the lease twelve months after serving written notice on the lessor of its intention to terminate it, and during said twelve months the minimum rental shall be $150,000, the payment of which is to be guaranteed by New England Theatres, Inc., or the reorganized Olympia Theatres, Inc.

"(d) The lease is to include also lease of the Wilbur Theatre for the same term as the lease of the Metropolitan Theatre. The lease is to provide that the Wilbur Theatre may be operated or closed from time to time and for such periods as the lessee may determine. The rental to be paid by the Wilbur Theatre during the periods of operation is to be 50% of the net profits after all operating expenses, which expenses shall include 4% of the gross admission receipts less admission tax as a management charge. The lease may contain provisions agreed to by the lessor

and the lessee for the commercializing of part or all of the Wilbur Theatre.

"(e) A loan of $60,000 will be made by the lessee to the lessor and will be applied against the last rentals which the lessee will be called upon to pay under the lease, in consideration of which the litigation now pending in the Superior Court of Massachusetts against Paramount-Publix Corporation and other defendants, instituted by minority stockholders of Boston Metropolitan Buildings, Inc., together with all other litigation and claims against Paramount-Publix Corporation or Olympia Theatres, Inc., arising on account of Boston Metropolitan Buildings, Inc., will be dismissed, settled or withdrawn; and funds for the payment of reasonable fees of the attorneys for the plaintiff in the pending cases shall be provided by the trustees of Paramount-Publix Corporation, the amount of the fees to be agreed upon by Jacob J. Kaplan, Esq., and the plaintiff's attorneys. General releases of outstanding obligations or contracts are to be exchanged between the Boston Metropolitan Buildings, Inc., Olympia Theatres, Inc., Metropolitan Theatre Company, Paramount-Publix Corporation and all other subsidiaries of Paramount-Publix Corporation which may be involved.

"(f) All questions with regard to films to be shown, changes of policies in the management of the theatre and all questions of this type, as well as the details regarding insurance, heat, light and power are to be worked out with Messrs. Pinanski and Mullin."

The appellant attacks the lease on the ground that it is enforceable neither at law nor in equity because of a want of consideration and because of the uncertainty in its terms.

We find nothing in the record showing that the debtor has a valid lease or even a valid and enforceable agreement for a lease. No proposed lessee is a party to this proceeding. The record is lacking in any language indicating that the proposed lessee has by word or deed bound itself to execute such a lease as is proposed in the debtor's plan of reorganization. In order for an agreement to be binding, it must be so definite in its terms that the promises and performances to be rendered by each party are reasonably certain. Ladd v. Foster Inv. Co. (C.C.A.) 40 F.(2d) 497; King Lumber Co., Inc., v. National Bank (C.C.A.) 286 F. 906; Rosenfield v. United States Trust Co. (Mass.) 195 N.E. 323; Woods v. Matthews, 224 Mass. 577, 113 N.E. 201; Boatright v. Steinite Radio Corp. (C.C.A.) 46 F.(2d) 385; Barber-Colman Co. v. Magnano Corp. (C.C.A.) 299 F. 401; General Motors Corp. v. Abell (C.C.A.) 292 F. 922.

The nearest approach to an agreement is the statement that the substantial terms have been agreed upon between the trustees of Paramount-Publix Corporation and the board of directors of the debtor. But the lease is to be made to a subsidiary corporation of New England Theatres, Inc. The lease, clause (b) provides, "At the option of the receivers of Olympia Theatres, Inc., or the reorganized company, the lease is to be transferred and assigned from the above described lessee to the Olympia receivership estate or to the reorganized company." Clause (c) provides that "the lessee is to have the right to terminate the lease in twelve months," but no such right is accorded to the debtor.

Who is the lessee? Is it the trustees of Paramount, an unnamed subsidiary of New England Theatres, Inc., or the receivers of Olympia Theatres, Inc? The lessee, whoever it may be, can cancel the lease in twelve months. It appears to be sort of a merry-go-round with all the power lodged in a central plant. How could a bondholder or stockholder, unless he was inside the ring, know in whose management his property is to be intrusted or how could he vote intelligently on the plan?

Only the general terms of the lease have been agreed upon. Important provisions are left unsettled. There is ample opportunity for disagreement under clause (f) alone. Obviously, the proposed lease is lacking in many essentials which are necessary to constitute an enforceable obligation at law or specific performance in equity. Specific performance will not be decreed in equity without clear and satisfactory proof of the contract. Dalzell v. Dueber Watch Case Mfg. Co., 149 U.S. 315, 13 S.Ct. 886, 37 L.Ed. 749; Colson v. Thompson, 2 Wheat. 336, 4 L.Ed. 253.

We hold that a plan conditioned upon a lease therein, the terms and conditions of which are left so indefinite as to be unenforceable by the court, is not a proper plan under 77B.

There are other and perhaps more convincing reasons why we hold that the decree of the District Court must be reversed.

320

There was nothing in the original plan that in any way affected the relative priority of the outstanding mortgage. The first amendment expressly and for the first time subordinated the rights of the mortgagees to the rights of the lessees. This constituted a change or modification in the original plan materially adverse to the interests of the first mortgage bondholders which as a class they were entitled to vote upon. The plan as amended should have been resubmitted, thus giving the creditors and stockholders an opportunity to withdraw their acceptances and file dissents if they cared to do so.

■ It is true that the presiding judge submitted the amendment to the special master for his consideration in connection with the original plan. The special master has found that the plan as amended does not discriminate unfairly in favor of any class of creditors or stockholders. But the trouble is that the judgment of the special master or of the district judge cannot be substituted for acceptances of creditors and stockholders of a plan which has never been submitted for their consideration.

In Re Pilsener Brewing Co. (Weiffenbach v. McLean) (C.C.A.) 79 F.(2d) 63, page 68, the court said: "The court in ignoring these variances from the first plan was evidently of the opinion that the creditors were just as well off under the plan approved by the special master as under the plan contained in these special authorizations, but that is not a question for the determination of the court but for the parties, for their acceptance is a necessary preliminary to the order of the court. The parties did not authorize the acceptance of the plan which was finally approved by the court. Consequently the order of the court was without the necessary authority."

■ There was nothing in the original plan which indicated to the bondholders that the liens secured by their mortgage were to be subordinated to the rights of the lessees. We think the district judge erred in not submitting the plan as amended for further consideration of the creditors and stockholders.

The proponents of the plan relying upon the second sentence of section 77B clause (f) make the claim that changes and modifications in the plan may be made, after a plan is confirmed, with the approval of the judge, and if in the opinion of the judge the changes or modifications will be materially adverse to the interest of any

creditor or stockholder, then notice must be given that creditors or stockholders may have a chance to withdraw their acceptances. It is urged that because the district judge found that, "In view of the master's report and the other circumstances of this case, I conclude with much hesitation that the amendment, when all its advantages are considered, is not materially adverse to the rights of creditors secured or unsecured, or to the rights of stockholders of any class," there was no statutory requirement for the resubmission of the amendment to the creditors and stockholders. It is argued that it is within the discretion of the district judge to determine the question of resubmission as a question of fact and that, having so determined the question, there is nothing to indicate as a matter of law that such discretion was abused.

■ While we do not determine that every unimportant and minor amendment filed under the provisions of clause (f) must be submitted to the creditors and stockholders for their determination, we do hold that it is a question of law and not a question of fact whether such amendments are materially adverse to the rights of any party, and that a change so important as the subordination of the rights of the first and second mortgagees to the provisions of the lease is materially adverse to the rights of such mortgagees and should have been submitted to them in a definite way for their consideration. This was not done. Amendments to debtor's plan of reorganization were filed April 11, 1935, one of the provisions of which is, "The mortgages upon the property of the debtor shall be subordinated to the lease." The plan with these amendments was referred to the special master April 12, 1935.

The master's report was filed April 17, 1935, finding that the plan with the amendments was feasible and fair and equitable. Thereafter, on April 26, 1935, the proponents of the plan filed a petition for the approval of the debtor's proposed amendments of the plan of reorganization, and on the same day the court ordered a hearing thereon to be held May 13, 1935, and that notice be given thereof, "by publishing a copy of this order once during the week of April 28, 1935, in the Boston Evening Transcript and by mailing forthwith a copy of this order to all known creditors and stockholders of the debtor and to counsel of record therein. At such hearing or at any adjournment or adjournments thereof

this court may determine whether said plan of reorganization has been duly accepted under section 77B of the Bankruptcy Act, may confirm said plan, and may make such other and further orders with respect to said plan or otherwise, or may approve or make any change in or modification of said plan, as to this court may seem proper."

At the hearing on May 13, the court made the ruling with reference to the amendment in the language above quoted.

It thus appears that at no time were the amendments, particularly the objectionable amendments, specifically submitted to the creditors and stockholders and no time was fixed for the creditors and stockholders who had previously accepted the plan within which they might withdraw their acceptances. We do not think the procedure followed was a compliance with clause (f) of section 77B.

█ It is further contended by the debtor that the subordination of the mortgage must necessarily be implied from the acceptance of the plan which was conditioned upon the execution of the lease. The mortgagees held a strong position. They held the first liens upon the mortgaged property. There could be no presumption of an intention on their part to surrender their rights. In order to effect such a surrender, clear and unequivocal language was necessary. We find nothing in the plan of reorganization which was submitted for the acceptance of creditors and stockholders indicating any purpose on the part of the mortgagees to surrender their rights. See Haven v. Adams, 4 Allen (Mass.) 80; In re National Lock Co. (D.C.) 9 F.Supp. 432 (an analogous situation with reference to stockholders); in which a petition for leave to appeal was denied (C.C.A.) 75 F.(2d) 1017. See, also, In re Neath & Brecon R. R. Co., [1892] 1 Ch. 349.

We hold that to subordinate the mortgages to the lease was to make a vital change in the rights of the bondholders, materially adverse to their interests.

The district judge apparently weighed the advantages of other amendments clearly in the interest of the creditor with the disadvantages of the subordination clause. But it was not for the district judge to make this determination, but for the bondholders whose rights were affected.

The appellant assigns as error the ruling of the district judge made May 13, 1935, by which he excluded over objections, evidence of an offer of $200,000 in cash for the Wilbur Theatre. In accordance with the notice of April 26, 1935, supra, May, 13, was fixed as a date at which the court might determine whether the plan of reorganization had been duly accepted and at which time the plan might be confirmed. The special master had made his report and it was before the district judge for confirmation. The evidence offered, if considered and accepted, would have constituted a material change in the plan which would have required the court either to abandon or continue the plan under consideration and resubmit a new plan for the acceptance or objection of creditors and stockholders.

█ While 77B, clause (f), 11 U.S.C.A. § 207 (f), provides that changes or modifications of a plan may be made "before or after a plan is confirmed" with the approval of the judge after hearing, we think the District Court committed no error in refusing to accept the offered testimony when the only question before him was the confirmation or rejection of the plan supposedly already accepted.

Appellant raises a question of the propriety of approving a plan of reorganization in advance of the filing in court of the requisite acceptances. An analysis and summary of acceptances of debtor's plan were filed by the clerk of Boston Metropolitan Buildings, Inc., on May 27, 1935. On May 13, 1935, an oral order was entered confirming the plan. The order of confirmation was made subject to "the coming in and the actual filing of the requisite assents."

█ Section 77B, cl. (e), subd. (1), 11 U.S.C.A. § 207 (e) (1), provides that a plan shall not be confirmed "until it has been accepted in writing * * * and such acceptance shall have been filed." Clause (f), subd. (3), 11 U.S.C.A. § 207 (f) (3), provides that the judge shall confirm the plan if satisfied that "it has been accepted as required by the provisions of subdivision (e), clause (1)." We construe this last provision to mean that clause (e), subdivision (1), must be fully complied with before the court has jurisdiction to confirm a plan. See Union Parlor Furniture Co. v. A. Weiser, Inc., (C.C.A.) 45 F.(2d) 711.

It has come to our attention that in some districts plans for reorganization have been presented for the approval of

the court in advance of being sent out to creditors and stockholders for their acceptance. While such a procedure may be in the interests of speed and economy, we disapprove of any such practice. While the district judge might be willing and perhaps ought to make known any disapproval he may have of a proposed plan in advance if it contains any such glaring defects as to satisfy him at once that if the plan were accepted he would never confirm it, to go further than this and prejudge a plan in advance is irregular. It would give the proponents of a plan the right to go before creditors and stockholders with the argument that the plan had been approved by the court and thus obtain acceptances which never would have been given.

■ We cannot say, however, in the instant case that the verbal confirmation of May 13, 1935, constituted reversible error because the final decree was not entered until May 27, 1935, the same day on which the summary of acceptances was filed in court.

■ The appellant's contentions that the debtor's plan is improper as a matter of law may be divided into two groups. (1) Assertions that the provisions relating to the readjustment of the relative claims and interests of the bondholders and stockholders discriminates unfairly against the first mortgage bondholders. (2) Because the debtor's plan as originally presented and as amended was not a proper plan because the provisions of the lease upon which the plan was conditioned were vague and unenforceable. It is unnecessary to enter further into a discussion of the lease. 77B, cl. (b), 11 U.S.C.A. § 207 (b), among other things specifies that a plan shall provide adequate means for its execution. The object of incorporating the lease in the debtor's plan was evidently for the purpose of complying with this condition, and if the lease were definite in form and enforceable, it would fulfill the requirements of the statute.

■ Appellant further contends that the debtor's plan is not a proper plan in that it (1) extends the maturity of the bonds for eight years; (2) it requires them to release all unpaid interest to July 1, 1934; (3) gives them after July 1, 1934, fixed interest of only 3 per cent. and an additional 1 per cent. if earned, and after the payment of 1 per cent. to the holders of the second mortgage bonds a final 1 per cent. if earned; (4) the sinking fund requirements of the present mortgage are to be waived temporarily; (5) the mortgage is to be subordinated to a proposed lease.

Authorization for these so-called objectionable features of the plan may be found in 77B, cl. (b), which provides that a plan of reorganization may include provisions modifying or altering the rights of creditors generally or of any class of them secured or unsecured, either through the issuance of new securities of any character or otherwise; may include provisions modifying or altering the rights of stockholders or any class of them; and shall provide adequate means for the execution of the plan which may include the transfer of all or any part of the property of the debtor to another corporation; may provide for the retention of the property by the debtor; the distribution of assets among creditors or any class thereof; the satisfaction or modification of liens, indentures, or other similar instruments; the curing or waiver of defaults; the extension of maturity dates of outstanding securities; the change in interest rates and other terms of such securities; the issuance of securities of either the debtor or any such corporation or corporations for cash, or in exchange for existing securities or in satisfaction of claims or rights or for other appropriate purposes and may include any other appropriate provisions not inconsistent with the act.

It thus appears that all these features of the plan objectionable to the first mortgage bondholders appear to be authorized by the statute.

But it is further claimed by the appellant that because of the foregoing mentioned features of the plan the district judge could not find as a matter of law that the plan was fair and equitable. This raises a question of whether a plan under 77B to be fair and equitable must measure up to the rulings of the Supreme Court in equity receiverships as announced in the case of Northern Pacific Railway Co. v. Boyd, 228 U. S. 482, 33 S.Ct. 554, 57 L. Ed. 931, and more recent decisions following the Boyd Case. This is an important question upon which we find no direct authority or precedent.

In entering upon a discussion of this question, which borders closely upon the question of the constitutionality of the act, we must keep in mind that there has never been any finding or ruling that the debtor

corporation is insolvent in fact. The special master found that the whole mortgaged property is worth about $2,800,000. The liabilities so far as they are important in this action are as follows:

1—First Mortgage Bonds.... $ 2,492,500
2—Second Mortgage Bonds.. 1,106,500
3—Interest due on First and Second Mortgage Bonds to December 15, 1932,........ 286,520.50

From the foregoing, it appears that the first mortgage bondholders are amply secured, and the appellant claims that following the rule laid down in the Boyd Case the first mortgage bondholders should be entitled to full priority. It may be problematical as to whether there is any equity for the second mortgage bondholders, and it is quite certain that there is no equity for the stockholders, either preferred or common. If the same principles of law applied in the Boyd Case are applicable to the instant case, we would have to hold that the debtor's plan is defective as a matter of law.

Some of the tests applied by the Supreme Court in dealing with the question of whether a plan of reorganization is fair and equitable in equity receivership proceedings are that the plan must not exclude any creditor from participation under the penalty of the plan being declared a fraudulent conveyance and that it must not disregard the priority of any class of creditors. In the case of Kansas City Terminal Railway Co. v. Central Union Trust Company, 271 U.S. 445, 454, 46 S.Ct. 549, 551, 70 L.Ed. 1028, it was said with reference to a plan of reorganization: "But 'no such proceedings can be rightfully carried to consummation which recognize and preserve any interest in the stockholders, without also recognizing and preserving the interests, not merely of the mortgagee, but of every creditor of the corporation. In other words, if the bondholder wishes to foreclose and exclude inferior lienholders, or general unsecured creditors and stockholders, he may do so; but a foreclosure which attempts to preserve any interest or right of the mortgagor in the property after the sale must necessarily secure and preserve the prior rights of general creditors thereof. This is based upon the familiar rule that the stockholder's interest in the property is subordinate to the rights of creditors, first of secured and then of unsecured creditors. And any arrange-

ment of the parties by which the subordinate rights and interests of the stockholders are attempted to be secured at the expense of the prior rights of either class of creditors comes within judicial denunciation.' Louisville Trust Co. v. Louisville Railway Co., 174 U.S. [674] 683, 684, 19 S.Ct. [827] 830 [43 L.Ed. 1130]."

From this it would seem that no plan is fair and equitable that does not recognize the prior rights of creditors. See, also, First National Bank v. Flershem, 290 U.S. 504, 54 S.Ct. 298, 78 L.Ed. 465, 90 A.L.R. 391.

One of the impelling reasons for the passage of 77B by the Congress was to provide a simpler method for the reorganization of corporations laboring under financial embarrassment due to overcapitalization and excessive fixed charges resulting from easy credit and excessive expansion of more prosperous days. It was necessary to devise a law to prevent unreasonable minorities from blocking fair and equitable plans of reorganization which they could do prior to the passage of 77B. In order to accomplish the desired purpose Congress turned to the principles of the Bankruptcy Act passed in 1898. This had stood the test of constitutionality. And as we view it, 77B is but an extension of the doctrine of composition provided in section 12 of the original Bankruptcy Act.

Reorganization plans under 77B may differ from offers in composition in form and complexity, but the difference is little more than one of degree. A plan of reorganization when accepted is nothing more than an agreement between the debtor and its creditors and stockholders, or if the debtor has been declared insolvent, then between the several classes of creditors. When such contract or agreement has been accepted by the requisite majority of creditors and stockholders, the principle long recognized in composition cases steps in and under the supervision of the court imposes upon objecting minorities the will of the majority. This could not be accomplished under the acid tests applied to equity receiverships before the passage of 77B.

We therefore hold that section 77B does not require that every plan approved as fair and equitable shall be of such a character that it would withstand attack by nonassenting creditors asserting their strict legal rights unaffected by any principles of the Bankruptcy Act.

To hold that the phrase "fair and equitable" has the same meaning when applied to a reorganization under 77B as it had in equity receiverships, is to eliminate from it to a certain degree the rights of creditors and stockholders to adjust their respective rights by contract and nullify provisions of the act which was passed to facilitate corporate reorganizations.

The acceptance of a proposed plan by the parties interested is strong evidence that it is fair and feasible. Jameson et al. v. Guaranty Trust Company of New York et al. (C.C.A.) 20 F.(2d) 808. On such matters business men may be trusted to know where their interest lies. But the weight of this evidence is much impaired if it appears that some assents to the plan may have been due to ulterior reasons not common to all of the class of the creditors or other parties whose assent is called for. Careful scrutiny on this point and also as to reasons of other than legitimate business character in which objections to the proposed plan appear to be grounded is always proper, in order to ascertain the weight to be given to the acceptance of it.

For the reasons hereinbefore stated, the decree of the District Court is vacated and the case is remanded to that court for proceedings not inconsistent with this opinion; the appellant recovers costs of appeal.