### In re PEYTON REALTY CO.
### No. 18015.

District Court, E. D. Pennsylvania.
Nov. 6, 1936.

White & Clapp, of Philadelphia, Pa., for debtor.

Schnader & Lewis, of Philadelphia, Pa., for exceptants.

KIRKPATRICK, District Judge.

The special master to whom the plan of reorganization was referred has filed a report in which he finds that the plan is not fair and equitable, and recommends that it not be confirmed.

█ The plan has received considerably more than the requisite proportion of assents of each class affected by it. Although all persons in interest received adequate notice and had full opportunity to be heard, no one appeared, either before the master or the court, objecting to the plan. However, I fully agree with the master that that fact does not relieve the court of the duty of passing upon the fairness of the plan and of disapproving it unless satisfied that it is fair and equitable. It was undoubtedly the intent of section 77B (11

U.S.C.A. § 207) that the judge should be constituted a guardian of the interests of nonassenting minorities—in spite of the fact that it left him without facilities for any independent investigation and without expert assistance in dealing with the numerous intricate and technical questions of accounting, appraisal, and financing usually involved in corporate reorganizations. Fortunately, questions of this nature do not arise in the present case. The master's report is concerned with what may be called the purely legal position of the nonassenting minority.

The value of the debtors' assets as of October 1, 1934, is, in round figures, $2,-600,000. There is a first mortgage, securing bonds of $3,000,000 principal, with $875,000 interest due; a second mortgage of $885,000 principal with no interest due; and notes, secured by additional second mortgage bonds as collateral, amounting to $244,000, with interest due on the notes, of $21,000. There are no other debts.

The plan provides for a new first mortgage of $2,400,000; 6,000 shares of preferred stock, preferred on liquidation to the extent of $100 per share, or $600,000; and 6,000 shares of common stock, of no par value, upon which no dividends are payable until the new bonds shall have been paid in full with interest. Under the plan, the old first mortgage bondholders get all the new first mortgage bonds and all the preferred stock. The total par value of the securities which they receive is thus less than the total of their present claim if interest be considered, but they have a preferred status to an amount which exceeds the full appraised value of the property. The common stock, which represents a potential equity only and has no present value, is divided half and half between the first mortgage bondholders on the one hand and the second mortgage bondholders and the noteholders on the other.

I shall assume, without deciding, that the master was correct in holding that the same considerations which, in Northern Pacific Railway Company v. Boyd, 228 U. S. 482, 33 S.Ct. 554, 57 L.Ed. 931, condemned the survival of a stockholder interest, would also forbid the rather remote equity given to the second mortgage bondholders in the present case; in other words, that this plan does not meet the equity receivership test of a fair plan as established in the Boyd Case. Upon this assumption, the only question here involved is whether that test is binding upon a judge in a proceeding under 77B; for it may be said at once that this plan is in general a reasonable and practicable readjustment of the affairs of this insolvent corporation—a conclusion which the absence of objection from any one confirms.

Subsection (f) of section 77B (11 U. S.C.A. § 207 (f), which provides that the judge shall confirm the plan "if satisfied" that it is fair and equitable, etc., undoubtedly means to vest a certain measure of discretion in him. Such discretion has, of course, much narrower limits than the judge's mere good faith in exercising it. It may be exercised only within the boundaries of the terms, "fair," "equitable," and "not discriminatory." The argument is not without force that, in fixing these objective characteristics to which the plan must conform, Congress intentionally used terms which had already acquired a fairly definite meaning in reorganization law and therefore meant them to have that meaning in the statute. It is based upon a well-known rule of statutory construction, but one which in this case is opposed to the major purpose of the law. It must be remembered that section 77B creates an entirely new procedure, designed to facilitate corporate reorganizations and, in particular, to free them from the difficulties which arose from the emphasis which the courts had placed upon the position of nonassenting minorities. The constitutional grant of authority to enact bankruptcy legislation gave the requisite power and the rights of nonassenting creditors secured and unsecured were restricted in important particulars by express provisions. In view of the well-understood purpose of the act and its radical departure from the theory of the equity receivership, it is hard to believe that Congress intended to carry into it by implication the rules of the superseded procedure.

It would be more consonant with the spirit of this legislation to hold that, in defining the limits within which the judge was to exercise the power to confirm or reject reorganizations, Congress was using the terms "fair" and "equitable" in a new sense broader than the definition which the courts had given them under equity receiverships. It is not necessary in this case to set the outside limits of the court's discretion. Undoubtedly nonassenting minorities were intended to be protected from exploitation, and provision was made for that, but I do not think that it

was the intention to preserve intact their former position in all particulars not expressly changed.

 I am in accord with the dictum of the Circuit Court of Appeals for the First Circuit in Downtown Investment Association v. Boston Metropolitan Bldgs., 81 F.(2d) 314, 323, to the effect that "section 77B does not require that every plan approved as fair and equitable shall be of such a character that it would withstand attack by nonassenting creditors asserting their strict legal rights unaffected by any principles of the Bankruptcy Act." This is a carefully worded statement and defines the precise scope of the ruling in the instant case. I do not hold nor do I read the opinion of the Circuit Court of Appeals as holding that the court must approve any plan accepted in good faith by the requisite number of creditors and stockholders.

The plan of reorganization will be confirmed.