**In re JANSON STEEL & IRON CO.**
No. 20244.

District Court, E. D. Pennsylvania.
Nov. 6, 1942.

Zimmerman, Myers & Kready, of Lancaster, Pa., for debtor.

David Rosen, of Philadelphia, Pa., and W. Hensel Brown, of Lancaster, Pa., for trustees.

Louis Mitnick, of Baltimore, Md., and Robert Rosenberg, of Harrisburg, Pa., for exceptant.

Arnold & Bricker, of Lancaster, Pa., for First Columbia Nat. Bank.

Martin E. Musser, of Lancaster, Pa., Special Master.

KALODNER, District Judge.

The debtor, Janson Steel and Iron Company, filed a petition on February 15, 1938, seeking reorganization under Section 77B of the Bankruptcy Act, as amended, 11 U.S.C.A. § 207.

The business was operated by the debtor in possession until January 11, 1941, when disinterested trustees were appointed by this Court.

A proposed plan of reorganization has been filed pursuant to Section 169 of Chapter X of the Bankruptcy Act as amended, 11 U.S.C.A. § 569. This plan was developed by the trustees in conjunction with the officers of the debtor company.

The principal features of the plan are as follows:

Payment in full of priority claims, consisting of administration expenses, obligations of the debtor while it was in possession of its assets and obligations of the trustees, taxes, wage claims entitled to priority (these have been paid in full with the exception of $2,258 found to be due under the Wage and Hour Law), and any other claims which it is found by the Court are entitled to priority; payment of all unsecured creditors in excess of $500 of 70 per cent of their claims in the following manner:

Ten per cent in cash upon consummation of the plan, and 60 per cent by the payment of 70 per cent of the net annual earnings each year, the entire balance of 60 per cent to be paid within five years from date of consummation of the plan, and to remain a liability of the debtor; unsecured claims of $500 or less to receive 70 per cent in cash upon consummation of the plan.

The First Columbia National Bank, of Columbia, Pennsylvania, is both a secured and unsecured creditor. The debtor created a bond issue in the sum of $65,000, secured by a mortgage of which the bank is the indenture trustee, covering its land, buildings, machinery and equipment. Twenty-three thousand dollars of said bonds are held by the bank as trustee for the Janson Estate; $42,000 of said bonds are held by it as security for indebtedness to it in the amount of $70,061 (see certified public accountants' report filed in these proceedings, Balance Sheet June 30, 1942), making it an unsecured creditor in the sum of $28,061. The plan provides for payment of interest in cash to the bank, as trustee for the Janson Estate, on the $23,000 of bonds held by it up to and including February 15, 1938, the date when the petition for reorganization was filed, in the sum of $6,152.50, plus interest from February 15, 1938, to the date of consummation of the plan; the payment of $1,888.38 in cash, representing interest due to the bank on $42,000 of bonds held by it as security for the indebtedness of the debtor to the bank, to February 15, 1938,

while the payment of interest on the $42,000 of bonds from February 15, 1938, to consummation of the plan, as well as the principal of the mortgage of $65,000, is to be extended for five years from the time of consummation of the plan, subject to the condition that an amount equal to 20 per cent of net earnings of the debtor company be applied each year, first toward payment of interest on $42,000 of bonds from February 15, 1938, to date of consummation of the plan, and second, to reduction of the principal. Interest accruing after date of settlement to be paid currently.

All stockholders of the debtor are to retain their stock as presently held by them.

The Court is to retain jurisdiction of the debtor to the extent necessary to carry out the plan with respect to the payment of net profits to unpaid general unsecured creditors, and for this purpose to appoint three trustees, one to represent the debtor company, one to represent the secured creditors, and one to represent general unsecured creditors, to supervise the operation of the business of the debtor company until the general unsecured creditors receive payment of the balance of the amount to be paid them under the provisions of the plan.

Sections 169, 171 and 174 of Chapter X of the Bankruptcy Act as amended, 11 U. S.C.A. §§ 569, 571 and 574, impose upon the Court the duty, after a plan has been filed, to fix a time for a hearing on such plan, and for the consideration of any objections which may be made, the giving of notice of said hearing, and the entry of an order approving the plan, or plans, which are fair, equitable and feasible, so that they may be submitted to the creditors for their action.

In pursuance thereof, I referred the proposed plan to a Special Master for the aforesaid purposes, and to report his findings and recommendations in respect thereto. The Special Master held a hearing, at which time objections were offered to the plan by several creditors. He filed his report, wherein he found that the plan complies with Section 216 of Chapter X of the Bankruptcy Act as amended, 11 U.S.C.A. § 616, and averred that said plan was fair, equitable and feasible, and recommended that it be approved by the Court.

Elezear Winakur, a creditor, filed objections to the Special Master's report, and hearing was had on his objections. After the said hearing the matter was again referred to the Special Master to consider and take testimony upon certain questions which had not been considered at the previous hearing, to wit, whether the $65,000 mortgage to secure the bond issue was a valid lien, whether the assignment of said bonds to the bank as collateral security was lawful, and whether the payment of interest to the bank as trustee under the indenture of trust, as set forth in the plan, was proper and legal. The Special Master held another meeting pursuant to such reference and found that the assignment and transfer to the bank, both as trustee for the Janson Estate and to it in its banking capacity, was lawful, and that the payment of interest to the bank as trustee under the indenture of trust, as set forth in the plan of reorganization, is proper and legal. He recommended the dismissal of the exceptions and the confirmation of his report approving the plan of reorganization. The same creditor again filed exceptions to the second report of the Special Master, and a hearing was held by me on the said exceptions.

Both sets of exceptions may be briefly summarized as follows:

1. That the plan is unfair in that upon liquidation general unsecured creditors would receive a dividend of 50 per cent, and if no liquidation takes place the present accumulated profits entitle the general creditors to an initial dividend of 25 per cent;

2. That no part of the cash or current assets should be utilized for the purpose of making any payment to secured creditors, that is to say, that the interest to be paid to the bank as indenture trustee of the mortgage, under the provision of the plan, is illegal;

3. That the bond issue of $65,000 assigned and transferred to the bank was contrary to the Constitution and laws of the Commonwealth of Pennsylvania;

4. That the provision in the plan for retention of jurisdiction by this Court, and the appointment of trustees, is not necessary;

5. That the plan is not as contemplated by the provisions of the Chandler Act.

In the light of these exceptions and the report of the certified public accountants filed with me, is the plan fair, equitable and feasible?

The last audit of the certified public accountants filed in these proceedings was a

report of the affairs of the debtor company as of June 30, 1942. The audit discloses current liquid assets as follows:

*Current Assets:*

| | | |
|---|---:|---:|
| Cash on hand.............................. | | $ 13.08 |
| Cash on Deposit in First Columbia National Bank ........................... | | 30,307.57 |
| Accounts Receivable ......... $ 35,228.05 | | |
| Less: Provision for Doubtful Accounts .................... | 735.00 | 34,493.05 |

| | | |
|---|---:|---:|
| Inventories: | | |
| Finished Goods ............. $ 14,577.30 | | |
| Scrap Metal ................. 103,538.70 | | |
| Supplies ..................... 14,791.55 | | |
| Cinders (Book Value $5,440.- 30 less Reserve of $2,940.30 | 2,500.00 | 135,407.55 |

| | | |
|---|---:|---:|
| Marketable Securities—100 Shares of the Aviation Corp. (Market Value June 30, 1942) ................................ | | 275.00 |
| Accounts Payable—Debit Balance........ | | 39.47 |
| Total Current Assets............. | | $202,535.72 |

*Fixed Assets:*

| | | |
|---|---:|---:|
| Land .......................... $ 6,000.00 | | |
| Buildings .......... $ 85,378.29 | | |
| Machinery and Equipment ....... 174,444.67 | | |
| Total Depreciable Assets ............ 259,822.96 | | |
| Less: Reserves for Depreciation ..... 138,408.22 | 121,414.74 | |
| Net Fixed Assets ................ | | $127,414.74 |

*Deferred Charges and Other Assets:*

| | | |
|---|---:|---:|
| Unexpired Insurance Premium $ 1,786.73 | | |
| Prepaid Real Estate Taxes... 108.06 | | |
| Class "B" Preferred Stock— Lancaster Iron Works, Inc. 20.00 | | |
| Notes Receivable—Originating Prior to February 16, 1938—See Notes Discounted—Contra ...................... 19,161.00 | | |
| Total Deferred Charges and Other Assets .................................... | | $ 21,075.79 |
| Total Assets ...................... | | $351,026.25 |

*Current Liabilities (Incurred after February 15, 1938):*

| | | |
|---|---:|---:|
| Accounts Payable ...................... | | $ 23,009.35 |
| Accrued Salaries and Wages............ | | 5,252.14 |
| Accrued Expenses—Schedule 1........... | | 1,903.03 |
| Accrued Taxes ........................... | | 19,238.62 |
| (Schedule 2—Note B)........ $39,238.62 | | |
| (This includes taxes in the amount of $20,000 set up for the year 1942, and which is not payable until 1943.) | | |
| Wages Payable—Arising from Claim Under Wage and Hour Law............ | | 2,258.00 |
| Accrued Interest on Mortgage Bonds of $23,000 ............................... | | 6,210.00 |
| Accrued Interest on Notes Payable of $50,000 .................................... | | 13,743.00 |
| Total Current Liabilities........ | | $ 71,617.14 |

*Liabilities Incurred Prior to February 15, 1938:*

| | | |
|---|---:|---:|
| Taxes ........................... | | $ 10,185.93 |
| Notes and Accounts Payable—Trade ........................ | | 111,686.50 |
| Mortgage Bonds Payable .............. $65,000.00 | | |
| Less: Treasury Bonds Pledged with Bank as Collateral for Notes Payable ........... 42,000.00 | 23,000.00 | |
| Accrued Interest on Mortgage Bonds .................. | 6,152.50 | |
| Notes Payable—First Columbia National Bank—Note (A) | 50,900.00 | |
| Accrued Interest—First Columbia National Bank...... | 1,888.38 | |
| Notes Receivable Discounted —See Contra ................ | 19,161.00 | |
| Advances by Officers and Others ........................... | 25,140.00 | |
| Total Liabilities Incurred Prior to February 15, 1938................... | | $248,114.31 |
| Total Liabilities ................ | | $319,731.45 |

It will be seen from the foregoing that as of June 30, 1942, there is available $202,535.72 of current assets that can be utilized in carrying out the general principles of the proposed plan, which, in effect, is a composition with the common unsecured creditors of the debtor. Can the debtor make an initial payment of more than 10 per cent as provided in the plan? I think it can. The current liabilities as shown in the report, supra, contain an item of $6,210, representing accrued interest on mortgage bonds of $23,000, from February 15, 1938, to June 30, 1942, and an item of $13,743 representing interest on $50,900 of notes payable to the bank, from February 15, 1938, to June 30, 1942. These two items total $19,953 and, if eliminated, reduce the current liabilities to $51,664.14. This obligation of $50,900 represents an indebtedness to the bank for money loaned, for which it holds $42,000 worth of bonds heretofore referred to as security, and the balance of $8,900 represents, and is treated under the proposed plan as, a general unsecured claim. The plan also provides that the interest on the $42,000 of bonds from February 15, 1938, to the date of consummation of the plan, is to remain an obligation of the debtor, with time of payment extended for five years. The plan, however, provides for the payment of interest, from February 15, 1938, to consummation of the plan, on $23,000 worth of bonds held by the bank as trustee for the Janson Estate. This is the item of $6,210. There is no reason for differentiating between these

accrued interest item payments, and I am of the opinion that this latter provision is neither fair nor equitable.

■ As to liabilities incurred prior to February 15, 1938, the date of the institution of these proceedings, there is an item of $25,140 representing advances by officers and others. Of these advances, $22,130 were by the present stockholders of the company (see report of Special Master classifying claims and stockholdings, page 23), who will derive the benefit of any plan of reorganization that is effectuated. They have likewise profited by the tremendous improvement of the financial status of the debtor since the appointment of the trustees, which is reflected in a comparison of the balance sheet contained in the report of the certified public accountants filed with me as of December 31, 1940, which showed current assets of $106,737.-81 as against current assets of $202,535.75 shown in the certified public accountants' report as of June 30, 1942. The report of December 31, 1940, shows a capital deficiency of $56,541 as compared to a net capital of $11,294.80 as of June 30, 1942.

It is my opinion that they should not share pari passu with the general unsecured creditors.

■■ The Supreme Court of the United States, in Securities and Exchange Commission ·v. United States Realty & Improvement Co., 310 U.S. 434, 452, 60 S.Ct. 1044, 1051, 84 L.Ed. 1293, said: " 'Fair and equitable', taken from § 77B and made the condition of confirmation under both Chapter X or Chapter XI are 'words of art' having a well understood meaning in reorganizations in equitable receiverships and under § 77B which is incorporated in the structure of both Chapters X and XI. See Case v. Los Angeles Lumber Products Co., 308 U.S. 106, 115 et seq., 60 S.Ct. 1, 7, 84 L.Ed. 110. The phrase signifies that the plan or arrangement must conform to the rule of Northern Pacific R. Co. v. Boyd, 228 U.S. 482, 33 S.Ct. 554, 57 L.Ed. 931, which established the principle which we recently applied in the Los Angeles case, that in any plan of corporate reorganization unsecured creditors are entitled to priority over stockholders to the full extent of their debts and that any scaling down of the claims of creditors without some fair compensating advantage to them which is prior to the rights of stockholders is inadmissible."

Any repayment of these advances to the stockholders should be postponed until the general unsecured creditors are paid the full amount provided for them in the proposed plan. Accordingly, if the items of accrued interest after February 15, 1938, and the advances by officers, are eliminated for the present, it is my opinion that there could be an initial payment of 25 per cent to unsecured creditors without jeopardizing the working capital of the debtor, as follows:

| | |
|---|---|
| Current Assets | $202,535.72 |

Liabilities to be paid in full and incurred after February 15, 1938 (date of filing of reorganization petition):

| | |
|---|---|
| Accounts Payable... | $23,009.35 |
| Accrued Salaries & Wages | 5,252.14 |
| Accrued Expenses... | 1,906.03 |
| Taxes | 19,238.62 |
| Wages Payable Arising from Claim Under Wage and Hour Law | 2,258.00 |
| Total | $51,664.14 |

Liabilities prior to February 15, 1938 (date of filing of reorganization petition):

| | |
|---|---|
| Taxes | $10,185.93 |
| Interest to Bank on Indebtedness of $42,000 of Bonds to Feb. 16, 1938 | 1,888.38 |
| Interest to Bank on $23,000 of Bonds held by Bank for Janson Estate to Feb. 15, 1938 | 6,152.50 |
| 70% of $6,131.81, representing Claims less than $500 | 4,292.26 |
| 25% of the Balance of Unsecured Claims of $133,-615.69[1] | 33,403.93 |
| Total | $55,923.00 |
| | $107,587.14 |
| Balance of | $ 94,948.58 |

[1] The item of $133,615.69 is made up as follows:

$105,554.69 Notes and Accounts Payable—Trade
19,161.00 Notes Receivable Discounted
8,900.00 Unsecured Notes Payable—First Columbia National Bank

$133,615.69 Total

The $107,587.14 necessary to consummate the plan of reorganization above outlined is approximately $12,000 higher than the $95,378.78. required to effect reorganiza-

tion under the plan approved by the Master, as appears from the following:

*Amount Necessary to Consummate Plan of Reorganization as Approved by Master:*

**Current Liabilities Incurred After February 15, 1938:**

| | |
|---|---|
| Accounts Payable | $23,009.35 |
| Accrued Salaries and Wages | 5,252.14 |
| Accrued Expenses | 1,906.03 |
| Taxes | 19,238.62 |
| Wages Payable Arising from claim under Wage and Hour Law | 2,258.00 |
| Accrued Interest on Mortgage Bonds of $23,000 from Feb. 15, 1938 to June 30, 1942 | 6,210.00 |
| **Total Current Liabilities** | **$57,874.14\*** |

**Liabilities Prior to February 15, 1938:**

| | |
|---|---|
| Taxes | $10,185.93 |
| Interest on $23,000 Mortgage Bonds to Feb. 15, 1938 | 6,152.50 |
| Interest on $42,000 of Bonds to Feb. 16, 1938 | 1,888.38 |
| 70% of $6,131.81 representing Unsecured Claims of less than $500 | 4,292.26 |
| 10% of $149,855.70, representing Balance of General Unsecured Claims | 14,985.57 |
| **Total** | **$37,504.64** |
| **Total** | **$95,378.78** |

*The above amount does not include interest on the $23,000.00 of bonds, from June 30, 1942 to the date of the consummation of the plan.

■ It is asserted that the delivery of $23,000 of mortgage bonds to the bank as trustee of the Janson Estate, and the pledging of $42,000 of bonds with it as collateral security for the antecedent indebtedness of the debtor company, contravenes Article 16, Section 7, of the Constitution of the Commonwealth of Pennsylvania, P.S.

This question has been settled by the decision of the United States Circuit Court of Appeals, of this Circuit, in Re Mifflinburg Body Co., 127 F.2d 59, wherein it was held that a pledge of corporate bonds as security for an antecedent debt of a corporation does not violate the provisions of the Pennsylvania Constitution herein involved. Petition of certiorari was denied in the United States Supreme Court on October 12, 1942. Mifflinburg Body Co. v. Mifflinburg Bank & Trust Co., 63 S.Ct. 29, 87 L.Ed. ——.

■ Objection is further made to the proposed plan in that it provides for the payment of interest to the bank as indenture trustee of the mortgage to secure the bond issue of $65,000 from the cash or current assets. I have already determined that the payment of accrued interest during the period that the assets of the debtor are in the possession of this Court should be postponed until after consummation of the plan, but the proposed plan provides for the payment, in cash, of the interest accrued to February 15, 1938, upon consummation thereof, and the payment of further accrued interest, from February 15, 1938, for 20 per cent of the net profits of the debtor. The objection goes to the payment of this interest because the mortgage covers the plant, not the general assets. I find no merit in this objection. The increase of income and profit to the debtor company has come from the use of the land, buildings, machinery and equipment which are covered by the lien of the mortgage. Consolidated Rock Products Co. v. Du Bois, 312 U.S. 510, 61 S.Ct. 675, 85 L.Ed. 982, relied on by exceptant, does not sustain his contention. On the contrary, it holds (312 U.S. at page 530, 61 S. Ct. at page 687, supra):

"The Circuit Court of Appeals, however, made certain statements which if taken literally do not comport with the requirements of the absolute priority rule. [114 F.2d 102.] It apparently ruled that a class of claimants with a lien on specific properties must receive full compensation out of those properties, and that a plan of reorganization is per se unfair and inequitable if it substitutes for several old bond issues, separately secured, new securities constituting an interest in all of the properties. That does not follow from Case v. Los Angeles Lumber Products Co., supra [308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110]. If the creditors are adequately compensated for the loss of their prior claims, it is not material out of what assets they are paid. So long as they receive full compensatory treatment and so long as each group shares in the securities of the whole enterprise on an equitable basis, the requirements of 'fair and equitable' are satisfied."

■ As to the objection to the provision of the plan providing for retention of jurisdiction by this court, until the general unsecured creditors are paid their full 70 per cent, it is my opinion that since secured creditors have their security to look to, the interests of the general unsecured creditors would be more fully protected if

the Court retained jurisdiction over the debtor and appointed trustees after consummation of the plan to supervise the operation of the business. This would be a feasible method of seeing that the provisions of the plan are carried out until the general unsecured creditors are paid the full amount that they are to receive under the provisions of the plan.

■ The exceptant creditor further asserts that the plan is improper and not as contemplated by the statute under which the proceeding is filed. This contention is also without merit. In Re Stanley Drug Co., D.C., 22 F.Supp. 664, 665, Judge Kirkpatrick said:

"As was pointed out in Re Peyton Realty Company, D.C., 18 F.Supp. 822, the court would not be relieved of the duty of passing upon the fairness of the plan even though no one appeared objecting to it. Nor is it by any means conclusive of its fairness that it has been almost unanimously accepted, though the latter fact is certainly not to be ignored. * * *

"The mere fact that the plan of reorganization is not more or less than a composition with general creditors which might have been presented under section 12 of the Bankruptcy Act, as amended, 11 U.S.C.A. § 30, is not of itself a reason why the court must disapprove it. Every plan of reorganization involves a debtor and creditors and every reorganization is in the broad sense a composition. Downtown Inv. Ass'n v. Boston Met. Bldgs., 1 Cir., 81 F.2d 314. * * * The test does not lie in the characteristics of the plan presented but whether it is fair and feasible. That means whether it is economically expedient, without discrimination or destruction of vested rights. In re R. L. Witters Associates, D.C., 19 F.Supp. 648, 651."

Section 216 of Chapter X of the Bankruptcy Act, as amended, 11 U.S.C.A. § 616, provides in part as follows:

"A plan of reorganization under this chapter—

"(1) shall include in respect to creditors generally or some class of them, secured or unsecured * * * provisions altering or modifying their rights, either through the issuance of new securities of any character or otherwise;

> * * * * * *

"(14) may include any other appropriate provisions not inconsistent with the provisions of this chapter. July 1, 1898,

c. 541, § 216, as added June 22, 1938, c. 575, § 1, 52 Stat. 895."

For the reasons above stated I cannot approve the proposed plan in its present form. An amended plan in conformity with the suggestions herein contained should be filed. Counsel for the trustees may present an order so that I may fix a time within which an amended plan shall be filed.