## AMERICAN UNITED LIFE INS. CO. v. HAINES CITY, FLA.
### No. 9734.

Circuit Court of Appeals, Fifth Circuit.

Feb. 12, 1941.

Robert J. Pleus and Hewen A. Lasseter, both of Orlando, Fla., for appellant.

W. Wallace Shafer, of Haines City, Fla., and J. Mark Wilcox, of Miami, Fla., opposed.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

On June 19, 1939, the City of Haines City, Florida, filed a petition for composition of its debts under Chapter IX of the Bankruptcy Act, as amended, 11 U.S.C.A. § 401 and ff. An interlocutory decree confirming a plan was entered October 2, 1939. By it the principal of the City's indebtedness was to be refunded dollar for dollar by new bonds bearing lessened interest and with a distant maturity. The coupons for past due interest and accrued interest on past due bonds were to be taken up on a low percentage basis within a brief time, or at the holder's option deposited in escrow with a named agent for transferable certificates of deposit, to be held for a period to expire November 16, 1940. Prior to that date the city was to make adjustments of past due taxes and assessment liens owed to it, so as to collect as much as possible on them, and remit the proceeds of collection to the escrow agent, who before May 16, 1940, would retire certificates therewith at 40 percent of par and thereafter until Nov. 16, 1940, at 50 percent of par. On Nov. 16, 1940, the escrow was to be closed, the city notified what certificates were outstanding, and their holders were to have new bonds like those issued for the principal of the old bonds, dollar for dollar, except that coupons maturing prior to April 1, 1940, would be removed. On October 10, 1940, the City filed a petition to modify the plan so as to allow it to raise money to redeem the remaining certificates at 50 percent of par in another way. On notice to creditors a hearing was had, and on Nov. 14, 1940, the Court granted the petition for modification over objection of appellant here, American United Life Insurance Company, which still held an unredeemed certificate for $16,430. Under the original plan appellant would on Nov. 16th be entitled to new bonds for $16,430, with interest coupons of April 1, 1940, and Nov. 1, 1940. It claimed the market value of the bonds had risen to 65. Under the modification, it could receive only 50 percent of par, without any interest.

The court found that after applying all the tax collections to date there were left $165,000 of escrow certificates, including the $16,430 certificate of the Insurance Company, and that the City was unable to collect more; that nearly all the other certificates were held by R. E. Crummer & Company, the City's fiscal agent, bought at 33⅓ percent of their principal; that the City had arranged to obtain from two outside firms $82,500 to take up the $165,000 of certificates, and they were to receive bonds equal to 92 percent of the certificates; and that the City would thus save $13,200 in its outstanding indebtedness. The court held the Insurance Company had agreed to accept 50 percent of its certificate if paid by Nov. 16, 1940, and could not object to the source from which the City got the funds. It held also that the modification was fair and equitable and not discriminating against any creditor, and allowed it. The Insurance Company insisted then and now insists that the court was without jurisdiction or power to alter the confirmed plan, certainly not after ten days under the Rules of Civil Procedure; and that the alteration was not fair and equitable and nondiscriminatory, but took its property without due process of law and gave it to outsiders.

The City contends that there was no modification, that the original plan permitted it to redeem the certificates at 50 percent of par before Nov. 16, 1940, by any means it could. We think otherwise. Section X of the original plan, after providing for adjustment of the defaulted taxes and assessment liens so as to make them more collectible, provides: "The proceeds of collection of said adjusted taxes and special assessment liens and interest thereon, as available, shall be remitted to the escrow agent; and as to said particular proceeds remitted," during the first six months certificates were to be retired at 40 percent of par; "and as to said particular proceeds remitted to the escrow agent" during the second six months they should be retired at 50 percent of par; and "all of the money so received by the escrow agent shall be held by the escrow agent until the escrow has been closed." Then follows the provision about balancing the accounts and having bonds delivered for the unredeemed certificates. The language we have emphasized confines the operation of the escrow, with its below par redemptions, to collections from the taxes and assessments prior to November 16, 1940, and does not contemplate the use of money raised otherwise.

We do not think, as appellant contends, the judgment confirming a plan is necessarily unalterable after ten days. Al-

though it is by the statute made appealable, 11 U.S.C.A. § 403, sub. e, it is in the same sentence, and in several other places, called interlocutory. Like other interlocutory judgments it remains in a measure in the court's control if not appealed from.[1] Though the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, have by General Order in Bankruptcy 37, 11 U.S.C.A. following section 53, been made generally applicable to bankruptcy proceedings, the provisions of Rules 59 and 60 limiting the time for new trials and some other forms of review do not render interlocutory judgments final. A better argument against the possible modification of a confirmed plan is based on the words of the statute, 11 U.S.C.A. § 403, sub. e: "Before a plan is confirmed, changes and modifications may be made therein, with the approval of the judge after hearing," etc. The implication is urged that afterwards changes cannot be made. We are unwilling to put a plan into such a strait jacket. It may be that some matter has been overlooked or has subsequently arisen, which makes the plan unworkable and complicated, but which could easily and justly be remedied. Surprise or mistake may affect it. There ought to be some leeway for such adjustments. But a composition is in its essence a contract, proposed by the debtor and agreed to by those of the creditors who give consent, and they in the requisite majority bind all. The interlocutory decree confirms it and establishes it as regular and lawful. A composition after confirmation ought to be respected as a contract, and not disturbed in its substance for light cause, or so as to give one party an advantage over the other; and especially so after partial execution.

■ The modification here made seems to us unjustified. It does not appear why the escrow redemption fund was limited to collections from the taxes and assessments, but it was. No surprise or mistake is claimed. It is not even proposed to realize on these assets by selling instead of collecting them. And the City is not borrowing $82,500, and giving its obligation for that sum. It is in effect taking the bonds it has promised to issue to the holders of the unredeemed certificates and delivering them to outsiders for a rebate of eight percent of their face. The effect is to divide between these outsiders and the City the profit which a rise in the market is about to yield to the Insurance Company. This does not seem to us fair and equitable as a modification of an almost wholly executed composition.

The holding by the City's fiscal agent, R. E. Crummer & Co., of the larger part of these certificates, bought at a discount, is put forward in the record; but the agent did not resist the modification or appear as a party to this appeal. It is not apparent whether the purchases were for the agent's account, or for the benefit of the City. We make no ruling upon the relations of the City and its agent. We hold simply that this modification of the plan was not fair and equitable, as was objected by the Insurance Company.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

---

[1] The court's control over interlocutory decrees is considered in Perkins v. Fourniquet, 6 How. 206, 12 L.Ed. 406; McGourkey v. Toledo & O. C. R. Co., 146 U.S. 536, 13 S.Ct. 170, 36 L.Ed. 1079; Iowa v. Illinois, 151 U.S. 238, 14 S.Ct. 333, 38 L.Ed. 145; John Simmons Co. v. Grier Bros. Co., 258 U.S. 82, 42 S.Ct. 196, 66 L.Ed. 475.