## In re HAINES CITY, FLA.
### No. 3146.

District Court, S. D. Florida,
Tampa Division.

July 22, 1941.

W. Wallace Shafer, of Lakeland, Fla., and Gordon C. Huie, of Haines City, Fla., for Haines City.

Robert J. Pleus, of Orlando, Fla., for R. E. Crummer & Co.

BARKER, District Judge.

Upon the petition of the City of Haines City, styled "Petition to Compel Compliance with Interlocutory Decree and for Related Ancillary Relief", filed March 7, 1941, coming on to be heard, this Court did, on March 27, 1941, enter its order directing the filing of an answer to said petition by R. E. Crummer & Company. Said answer was filed and this Court then set July 8, 1941 as the date for the taking of the testimony and the reception of such evidence as might be offered by the respective parties. On said 8th of July, 1941, the hearing was begun directly before the Court, who heard all witnesses tendered and examined all documentary evidence admitted, which testimony was taken in stenographic form by the official Court Reporter. Such hearing lasted two days and oral argument was had Thursday, July 10, 1941, following which the Court now desires to make its findings of fact and conclusions of law and enter its order accordingly.

Findings of Fact.

1. That under date of July 26, 1938, there was entered into a contract between R. E. Crummer & Company, as First Party, and City of Haines City, as Second Party, copy of which is attached to the City's said petition as Exhibit 1; that said contract was entered into following extended negotiations wherein the City of Haines City was represented by its duly authorized City Commission, which was its governing body, and by competent counsel, and was assisted by the advice of a Citizens' Committee; that in such negotiations, from the evidence produced, all parties knew and fully realized the import and contents of said contract; that said contract provided for a par for par refunding of the principal debt of the City of Haines City, and all interest accrued thereon to April 1, 1938, the same being the date of the proposed Refunding Bonds which were to bear the following interest rates: 2% per annum for the first five years; 3% per annum for the next succeeding five years; 4% per annum for the next succeeding five years; 5% per annum thereafter.

2. That the said contract of July 26, 1938, provided specifically for the refunding of the said interest accrued and unpaid to the date of the said Refunding Bonds, to-wit, April 1, 1938; and in Section 1(B) specifically provided for the delivery of the Refunding Bonds allocated to be exchanged for evidence of such accrued interest as the First Party (R. E. Crummer & Company) should be able to assemble evidences of such accrued interest in blocks of $1,000 and provided that the manner and method of assembling such evidences should be a matter wholly between said First Party and bondholders participating in the Plan. The only difference between the bonds issued for principal and the bonds issued for interest was to be that the latter would have attached coupons evidencing interest from October 1, 1939, instead of from April 1, 1938.

3. That said contract of July 26, 1938, likewise provided in Sections 10(G) and 10(H) that the Refunding Bonds to be

delivered to the First Party on account of the interest items should not be delivered for a specified period of time during which they were to be held available by the First Party at 40% of par upon the order of the City for use in the payment of delinquent taxes for the years 1936, or prior, or special assessment liens, during the first six months of said period, and at 50% of par thereafter.

4. That the only reasonable construction of all the evidence bearing upon the said contract and the provisions thereof relating to the said interest items is that the City definitely intended to specifically authorize the First Party to acquire by purchase, or otherwise, in any manner it saw fit, the said interest items; and that the City did so authorize with full knowledge of all the facts. To construe it otherwise would have rendered it virtually impossible for the First Party to have performed.

5. That the City, its officials, attorney, and Committee were advised specifically and well knew that R. E. Crummer & Company was a creditor of the City of Haines City and represented creditors of the City of Haines City in an effort to obtain for such creditors the best possible and most feasible plan of readjustment; and said parties likewise knew that R. E. Crummer & Company was engaged in the investment banking business as a dealer in municipal securities.

6. That following the said contract of July 26, 1938, which was predicated upon the theory of a voluntary exchange, it became apparent that certain security holders would not voluntarily exchange their holdings for the Refunding Bonds, and it was determined by the City that to make the plan of readjustment succeed it would be necessary to institute proceedings under Chapter IX of the Bankruptcy Act of the United States, as amended, 11 U.S.C.A. § 401 et seq. Accordingly, the staff of R. E. Crummer & Company prepared the Plan of Composition which was made the predicate for such proceedings and which was identical with the terms of settlement as outlined in said contract of July 26, 1938, except that it allowed the adjustment of taxes for the years 1937 and prior, instead of 1936 and prior, which the evidence shows to have been insisted upon by the City and for its benefit, because of a high levy in 1937; and except that Section 10 provided different mechanics, although the substance and objective were the same, in the manner of handling the accrued interest liability to April 1, 1938. This change in mechanics, as shown by the evidence, was due to a decision of the United States District Court for the Southern District of Florida in another pending bankruptcy proceeding, wherein it was held necessary to make purely optional and voluntary the disposition by various holders of their accrued interest items. Hence, it was that the said Section 10 provided for an escrow feature whereby the accrued interest liability would be escrowed and be subject to redemption by the City at the same reduced rates of 40% and 50% of par during the first six months and the second six months, respectively, after first exchange of Refunding Bonds, at the end of which time Refunding Bonds at par would be issued for the balance unredeemed or unliquidated. The City likewise reserved to itself the right to buy at less than the agreed maximum percentages of par. Likewise, the City, having no available funds of its own, specifically authorized R. E. Crummer & Company to tender to bondholders approximately $33\frac{1}{3}\%$ of the face amount of such interest claims, which tender could be accepted or rejected at the bondholders' option to be exercised in writing in accordance with the provisions of said Section 10; and if such holder elected to so sell his said interest items, his refunding assessment would be reduced from $40 per $1,000 of principal debt to $20. In the event of purchase by R. E. Crummer & Company at the agreed price of the said interest accruals by voluntary sale by holders to it, the Plan specifically provided that, "in such event such certificates of deposit shall be issued or assigned to R. E. Crummer & Company, who shall hold the same in like manner as other holders and receive the Refunding Bonds to be issued therefor." During the negotiations between the attorney for the City and Mr. Lasseter, the latter representing R. E. Crummer & Company, the attorney for the City specifically inquired of Mr. Lasseter the reason for the provision of the plan just quoted, to which inquiry the representative of the Fiscal Agent answered in substance, that if the Agent was to be bound to make these interest claims available at discounts as provided in the contract, it would be necessary for the Agent to be protected by giv-

ing to it means of acquiring these claims for accrued interest. But the language of the plan is unmistakable and susceptible of no other construction than that R. E. Crummer & Company was authorized by the City and required under the terms of said Plan to offer to holders the agreed price, and if such offer were accepted, it would then become sole owner of such certificates with identically the same rights as other holders, and would be entitled to receive the Refunding Bonds to be issued therefor. The offer of this cash consideration to holders was for the twofold purpose of continuing the offer made to them under the original Plan, which contemplated a voluntary exchange, and of offering an immediate cash liquidation of defaulted interest items at the then market value so as to thereby make the Plan of Composition more acceptable as the basis for their voluntary consents thereto.

7. That at the time the figure which the City authorized R. E. Crummer & Company to tender to bondholders for their interest items was set, the same approximated the then market value and worth of such items.

8. That said Plan of Composition, as originally so drafted, was submitted to W. Wallace Shafer, as the then duly authorized City Attorney (who is now one of the attorneys of record for the City in this proceeding), and was specifically required by him to be changed in certain particulars, and as so changed was by him submitted to the City Commission of the City and by it unanimously adopted by formal resolution; and was thereafter printed and circulated among creditors for the purpose of obtaining consents, in the obtaining of which consents the said City Attorney played an active role.

9. In addition, the City specifically authorized, by formal resolution, the Attorney for R. E. Crummer & Company, at no cost to the City, to appear as Special Counsel for it in association with its City Attorney in the prosecution of the proposed bankruptcy proceedings.

10. That following the obtaining of consents from the requisite percentage of creditors, there was drafted and submitted to the said City Attorney for his specific approval the proposed petition invoking the provisions of said Chapter IX; and, upon his approval and signature and the signatures on behalf of the City by the then Mayor and City Clerk, and verified by the two latter officers, the said bankruptcy proceedings were instituted by the filing of said petition and the securing of an initiatory order on June 19, 1939.

11. That following the filing of said petition, the said City, through its said duly appointed City Attorney and associate counsel acting in complete cooperation in all matters pertaining thereto, prosecuted said proceedings to the entry of an Interlocutory Decree on October 2, 1939. That said Interlocutory Decree, although drafted by the said associate counsel, upon the day of its rendition, a copy thereof was immediately forwarded to the office of the City Attorney and no question or objection was raised with regard thereto.

12. That on October 19, 1939, there was entered by this Court an order approving the form of Certificate of Deposit and Notice of Option relating to the mechanics of carrying out the Plan of Composition, and on that day a copy of said order, together with a copy of said Certificate of Deposit and Notice of Option, was immediately submitted to the said W. Wallace Shafer, as City Attorney, as well as the form of a resolution containing the exchange instructions to the Exchange Agent Bank named in the Interlocutory Decree. That all of said papers were submitted to the said W. Wallace Shafer for his approval with the request that upon such approval, the said resolution with such forms attached be submitted to the City Commission for its formal adoption. That such was done by said City Attorney and the said City Commission formally and unanimously passed said resolution.

13. That the first exchange of Refunding Bonds took place on November 10, 1939, and the one year period provided for the escrow began to run on that day and during said period the said City, acting in each instance by and through its duly constituted Commission, purchased interest accruals represented by Certificates of Deposit from or through R. E. Crummer & Company, as shown in Exhibit No. 2 of its Answer, aggregating $86,433.75 par, for the sum of $34,379.53; and that each of said purchases was below the then prevailing maximum percentage provided in the escrow arrangement; and the purchases in March and May of 1940 at 39% of par were slightly over the cost of such items, which cost was approximately 38%

of par, taking into consideration the reduced assessment against bondholders who elected to sell.

14. That under date of October 10, 1940, there was filed herein a petition by the City styled "Petition of Haines City, Florida, for Modification of its Plan for the Composition of its Debts and for the Approval and Confirmation Thereof." While this petition contained many allegations with reference to being based upon a pledge of the delinquent tax liens to re-pay the money proposed to be borrowed from two outside lending agencies, to-wit, Allen & Company and Fenner & Beane, written evidence shows that the City and its Attorney knew the real purpose thereof was to obtain approval for an enforced transfer to said lending agencies of the certificates of deposit in the escrow account, and in turn the Refunding Bonds to be issued therefor, with the City issuing only 8% less in Refunding Bonds. The evidence further shows that one of the said lending agencies had contingently committed itself for a sale of the said Refunding Bonds at a considerable profit to itself. The bringing of said prior petition filed October 10, 1940, is inconsistent with and repugnant to the present proceedings in that thereby the said City recognized in full its obligation to refund said accrued interest liability by issuing Refunding Bonds therefor. The result of said prior petition was the decision by the Circuit Court of Appeals, reported as American United Life Insurance Company v. Haines City, Florida, 5 Cir., 117 F.2d 574. Furthermore, the allegations in the prior petition of October 10, 1940 are entirely inconsistent with the theory upon which the present petition is based and specifically represented to the Court, under oath, that the City of Haines City had exercised its most diligent effort to collect its adjusted 1937 and prior tax levies, and special assessment liens, but had not been able to collect sufficient moneys to completely liquidate the said escrow by the date of termination thereof, and that it anticipated and reasonably expected within a reasonable time thereafter to receive, by means of a sustained program of delinquent tax collections and by the enforcement and perfection of its tax liens, approximately $100,000. Thus, if said allegations are true, any balance due on account of the Certificates of Deposit, for which Refunding Bonds must be issued, is due solely to the failure of the City of Haines City to realize upon its delinquent taxes within the time limit specifically set up in the Plan.

15. That each and every one of the contractual duties and obligations devolving upon R. E. Crummer & Company as a result of the said contract and Plan have been fully and completely met and complied with in every respect; and each and every action taken by it was taken in compliance with said contract and Plan and, where authorization was required, under specific order or orders of this Court.

16. That, under the said Plan and the prior contract, it was essential that the Company purchase the interest accruals, and its rights upon such purchase were fixed in said contract and Plan, and there was no misrepresentation whatsoever with reference to this feature of either the contract or Plan, and all parties fully understood its meaning and import.

17. That the course of conduct on the part of R. E. Crummer & Company was fully authorized, all that has been done by it was done in good faith, and it in no manner used or attempted to use its position or fiduciary relation to obtain possession or ownership of those matured interest accruals which it did buy, and such acquisition in no manner precluded or prevented the City from being able to deal directly with its creditors, but on the other hand, the City had specifically authorized and required R. E. Crummer & Company so to do, and the City accepted the full benefit of its performance.

18. That the evidence is conclusive that R. E. Crummer & Company neither had nor attempted to have anything approaching exclusive control of the management or direction of the proceedings relating to the mechanics of the proposed refunding, the Plan of Composition, or the proceedings before this Court incident thereto; nor that it prescribed the terms or conditions of the Plan, or the machinery for effectuating the same, nor that it was represented in such manner as to give to it anything approaching effective or exclusive control over the matters relating thereto. On the contrary, the evidence is conclusive that every single step taken was submitted to the City, approved by it, acting through its duly authorized attorney and City Commission, and that no request of the City with reference thereto was ever rejected, and

that every request so made was respected by R. E. Crummer & Company and its staff.

19. That the course of conduct on the part of R. E. Crummer & Company, as disclosed by the evidence, was not only compatible with its duty to the Court and consistent with its relationship with the City, but was in exact accord with the contract, Plan and orders of this Court.

20. That any purchase and the consequent profit, if any, on account thereof, made by R. E. Crummer & Company was specifically authorized by and disclosed to the City, and it now is in no position to complain thereof.

21. That, as alleged in the answer, the par value of interest accruals converted into interest Certificates of Deposit amounted to $176,191.87, of which the City retired, in accordance with the Plan, $86,433.75 at a cost to it of $34,379.53. That outstanding Certificates of Deposit amounted to $89,758.12, of which $39,015 were never owned or acquired by R. E. Crummer & Company, and the remaining $50,743.12 were once owned by R. E. Crummer & Company, and by said company assigned, transferred and sold at its exact cost and without profit prior to the bringing of this petition.. However, counsel for R. E. Crummer & Company stated in the record that this cause could be determined as if said $50,743.12 in interest accruals were still owned by the said company. The interest accruals so acquired by the said company were acquired at the price fixed and in exact accordance with the said Plan.

22. That throughout the bankruptcy proceedings leading up to the Interlocutory Decree, and in the performance thereof, the City itself was the proponent of all proceedings, accepted the benefits thereof, induced others to act upon the Plan adopted by it, and the proceedings taken by it, and as to said action it is not now in position to complain.

### Conclusions of Law.

1. That the City was authorized to enter into the contract of July 26, 1938.

2. That the City was authorized to promulgate the Plan of Composition made the basis of these original proceedings.

3. That there is no evidence whatsoever of any concealment, fraud, overreaching, misrepresentation, bad faith or breach of any fiduciary or other responsibility or obligation on the part of R. E. Crummer & Company.

4. That there is no evidence of any breach of contract or failure to perform on the part of R. E. Crummer & Company, and to grant the relief sought by the City in these proceedings would be to alter and change its solemn contract and agreement in so far as R. E. Crummer & Company is concerned, and to the latter's detriment.

5. That the City, being the proponent throughout and accepting all benefits with full knowledge of all the facts, is now estopped by its course of judicial conduct in these proceedings to, in effect, change or alter its contract or Plan to the prejudice of another who has fully performed and has acted in reliance thereon.

6. That in performance of its duties and obligations under the contract and Plan, R. E. Crummer & Company, as authorized by the City and required by it so to do, made a capital investment of its own moneys and assumed the risk thereby entailed. Had there been a loss, the City would have been under no obligation whatsoever to make it good. Now that a profit might accrue because of a market rise, equity dictates that the City is estopped to claim any part of such profit which might be made pursuant to its express authorization and direction to another, and by the use of that other's own funds and in compliance with and fulfilment of that other's duties and obligations under the contract and Plan.

Wherefore, it is now hereby ordered and adjudged that the Petition filed herein March 7, 1941 by the City of Haines City be and the same is hereby dismissed with prejudice and at the cost of said City, said cost to be taxed by the Clerk after approval of the Court.

It is further ordered that the transcript of the testimony taken be prepared and filed in this cause by the official court reporter, and that the charges therefor be, together with the per diem of said reporter, included in the costs to be taxed.