In re ALTON R. CO.

GIBBONS v. GARDNER.

Nos. 9251, 9252.

Circuit Court of Appeals, Seventh Circuit.
Jan. 24, 1947.

Thomas Dodd Healy, of Chicago, Ill. (Louis Boehm, of New York City, of counsel), for appellants.

Anan Raymond, Tappan Gregory, Robert L. Hunter, and Carl A. Waldron, all of Chicago, Ill., Fred N. Oliver, Willard P. Scott, and Delano Andrews, all of New York City, and Kenneth F. Burgess, Douglas F. Smith, George Ragland, Jr., and Luther M. Walter, all of Chicago, Ill. (Oliver & Donnally, of New York City, and Sidley, Austin, Burgess & Harper, of Chicago, Ill., of counsel), for appellees.

Before MAJOR and KERNER, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

This appeal involves five orders of the District Court entered in the Alton Railroad Company reorganization proceedings under Sec. 77 of the Bankruptcy Act, Title 11 U.S.C.A. § 205 et seq. The orders were entered October 21, November 13, November 15 (only a portion of this order is appealed from), November 22 and November 27, 1946.

Appellants are a committee asserted to represent a substantial majority of all security holders participating in the Plan of Reorganization, who by permission of the court intervened in the proceedings April 1, 1943. The Plan of Reorganization, after certification by the Interstate Commerce Commission and approval by the court, was submitted to and accepted by the requisite security holders and confirmed by the court on October 21, 1946. The essential purpose to be accomplished by the Plan is a sale of the debtor's property to the Gulf, Mobile and Ohio Railroad Company (sometimes referred to as G. M. & O.), with that company issuing securities in exchange for distribution to the debtor's bondholders. Other railroads were included in the reorganization setup, namely, the Kansas City, St. Louis and Chicago Railroad Company, the Joliet and Chicago Railroad Company, and the Louisiana and Missouri River Railroad Company.

All the orders appealed from were entered subsequent to the confirmation of the Plan by the court and have to do with its consummation. It appears unnecessary, therefore, to describe the provisions of the Plan other than those directly relevant to and concerned with such orders. While the contested issues are stated by the respective parties in numerous ways, we think the overall issue, succinctly stated, is whether the court exceeded its authority in entering the orders complained of.

The provisions of the Plan so far as material to the instant controversy may appropriately be noted at this point. Under the heading of "Reorganization Managers," it provides:

"There shall be three reorganization managers, one of whom shall be designated by the Stephen B. Gibbons protective committee for holders of refunding-mortgage 3-percent bonds due October 1, 1949, of The Chicago and Alton Railroad Company, one by the Mutual Savings Bank Group and The Equitable Life Assurance Society of the United States, jointly, and one by the Thorvald F. Hammer independent committee for holders of 6-percent guaranteed preferred stock of the Kansas City, St. Louis and Chicago Railroad Company, all subject to the approval of the court; provided, however, that if the court shall find that at the time of designation either of the committees named has ceased to hold or to represent a substantial interest in the property, the court may in its discretion designate in lieu of such committee. Should any of the parties named fail to make such designation within such time after confirmation of the plan and notice as the court shall consider reasonable, the court shall appoint the reorganization manager whom such party was entitled to designate. If there be any vacancy, however,

created, after the appointments are made, the successor reorganization manager shall be designated by the party who designated the reorganization manager whose position has become vacant, subject to the approval of the court. In case of failure of any party to designate any such successor within such time as the court shall consider reasonable, such successor shall be designated by the court."

At this point, we note that there is no finding by the court or any contention that those authorized by this provision to designate managers had "ceased to hold or to represent a substantial interest in the property," or that they failed to make such designation within such time "as the court shall consider reasonable," or that they failed in case of vacancy to designate any such successor "within such time as the court shall consider reasonable."

The Plan provides:

"Subject to limitations of law, including the limitations of subsection 77(c)(12) of the Bankruptcy Act, the reorganization managers shall have full discretionary power (a) to take all such action and to enter into such arrangements, financial and otherwise, as they may deem necessary or advisable in order to consummate and carry into execution the plan; (b) to fix the compensation of trustees, depositaries, counsel, and others whose services they may employ in the execution of their powers, which, together with all reasonable expenses, including counsel fees, shall be paid by the Gulf, Mobile and Ohio Railroad Company; * * * (d) to provide the method by which creditors and other interested parties may participate in the plan, including the distribution of new securities of the reorganized Kansas City, St. Louis and Chicago Railroad Company and of the Gulf, Mobile and Ohio Railroad Company; * * * (f) to make subject to the approval of this court minor adjustments in details of the plan as they may deem advisable; and (g) to construe the plan."

The Plan further provides:

"Any construction of the plan by the reorganization managers on advice of counsel shall, subject to the approval of the court, be conclusive. The reorganization managers shall, however, exercise only such powers as shall be necessary to carry out the plan in accordance with its provisions subject to the direction of the court * * *. The reorganization managers * * * may employ such agents, attorneys, and others as they may deem desirable to carry out the plan, and may delegate to others any powers or discretion conferred upon them, and no reorganization manager shall be liable for any action taken by him in good faith * * *."

The Plan also provides "the carrying out of the plan shall be under the direction and supervision of the court," and under a heading, "Construction of the plan," provides:

"The construction of the plan by the court, whether before or after submission of the plan to creditors and stockholders shall be final and conclusive. The court, whether before or after submission, may cure any defect, supply any omission, or reconcile any inconsistency, in such manner or to such extent as may be necessary or expedient in order to carry out the plan effectively."

Appellants in their brief enumerate at great length the "important functions, powers and discretions lodged in or to be exercised by the reorganization managers in carrying out and implementing the plan," with which it is asserted appellants, on behalf of the security holders represented by them, are vitally concerned. On the other hand, appellees seek to minimize the importance of the duties and obligations with which the managers were vested. We are of the view that we need be little concerned with whether the duties and responsibilities which the Plan imposed upon the managers are as important as claimed by appellants or as insignificant as asserted by appellees. Whatever be the merits of the controversy in this respect, there is no escape from the fact that the manner of designating the reorganization managers, as well as their duties, rights and responsibilities, is definitely fixed by the Plan, certified by the Commission, assented to by the creditors, and confirmed by the court.

This brings us to a consideration of the orders complained of. On October 21 (the

same date the Plan was confirmed by the court), the court entered the first order complained of, as follows:

"On the Court's own motion, It Is Ordered That:

"(1) Henry A. Gardner, Trustee of the properties of the Debtor, be, and he hereby is, authorized and directed, to put into effect and carry out the Plan of Reorganization heretofore approved and confirmed by this Court, under the direction and supervision of this Court; and

"(2) The trustee be, and he hereby is, authorized and directed to employ Messrs. Sidley, Austin, Burgess & Harper as counsel to so put into effect and carry out the Plan * * *."

On or prior to October 18, 1946, the names of the designees of the three groups authorized by the Plan to designate reorganization managers were submitted to the court. Immediately after the entry of the order of October 21, the court announced from the bench its refusal to approve such designees for the reason that they were residents of New York, although they were "unquestionably men of high standing and men of ability." The court at the same time announced:

"Now, I have directed the Trustee to take the steps necessary to put the plan into execution. It is my desire that that be done forthwith. * * * Accordingly I take it it will be unnecessary for the reorganization managers to employ counsel unless some extraordinary situation may arise which makes that employment necessary * * *."

Thus at the very inception the court authorized and directed the debtor's trustee to carry out the Plan, in direct contravention of the provisions of the Plan which expressly and specifically vested such authority and power in reorganization managers. Also at the same time the court directed the trustee to employ certain designated counsel, in violation of Sec. 205, sub. c (2), which authorizes the trustee to select his own counsel subject to confirmation by the court.

The parties authorized by the Plan to designate reorganization managers evidently for the purpose of avoiding delay ac-

quiesced in the court's refusal to approve nonresident managers. It is not necessary, therefore, to consider the action of the court in this respect. On October 24, October 29 and November 4, 1946, the Thorvald F. Hammer committee, the Mutual Savings Bank group and the Equitable Life Assurance Society jointly, and appellants, in conformity with their authority contained in the Plan, designated respectively John E. Gavin, Roy D. Keehn and A. Bradley Eben, all of Chicago, to act as reorganization managers. With these newly designated managers awaiting its approval, the court on November 13, 1946 entered the second order complained of. This order was entered upon the petition of Gardner as trustee and provided:

"(1) That the Trustee be, and he hereby is authorized and directed to exercise all powers of the reorganization managers under the Plan, pending their designation and approval.

"(2) That the Clerk of this Court be, and he hereby is authorized and directed to forward a copy of the said petition to the Interstate Commerce Commission, Washington, D. C., together with a copy of this order, for the fixing of the maximum limits of allowance for said expenses and services in connection with carrying out and putting into effect the Plan of Reorganization herein."

On November 15, 1946, twenty-two days after the designation of Gavin, seventeen days after the designation of Keehn and eleven days after the designation of Eben, the court entered an order reciting their designation as reorganization managers and approved their appointment, "provided that their exercise of authority under the Plan shall at all times be subject to the direction of this Court." This order further recited the court's action of October 21, 1946, authorizing and directing that the trustee employ "Messrs. Sidley, Austin, Burgess & Harper as counsel to put into effect and carry out the Plan of Reorganization," and without a scintilla of proof, so far as the record discloses, that "substantial progress has been made in effectuating said Plan." The reorganization managers were specifically directed not to "employ other counsel or in any manner limit or impair

the direction heretofore given to the Trustee and his counsel above named." The portion of this order which limits the authority of the managers as contained in the Plan is involved in this appeal.

At this point it is pertinent to note that no question is raised on this record as to the honesty, integrity or ability of Eben, Keehn or Gavin to serve as reorganization managers. In fact, they are all well and favorably known members of the Chicago Bar. Why the court so long delayed the approval of their appointment is not disclosed. More than that, the court by its orders of November 13 and November 15 renewed the authority of the trustee and the court-appointed counsel to carry the Plan into effect. Moreover, the authority thus conferred upon the trustee and counsel was not withdrawn or diminished in any respect. In fact, the order of November 15 approving the appointment of Eben, Keehn and Gavin was little more than a meaningless gesture for the reason that by the same order the court stripped them of all substance of power and authority which was theirs according to the provisions of the Plan. Furthermore, the reorganization managers were specifically forbidden to employ counsel, notwithstanding the fact that they were specifically authorized so to do by the Plan.

On November 22, 1946, the court entered the fourth order involved in this appeal. This order also recites that it is on the court's own motion and provides that the court's order of November 15, 1946 "approving the designations of certain persons as reorganization managers be, and it hereby is, vacated and suspended pending the further order of this court." Like the other orders, it was also entered without hearing and without any reason assigned as to why the approval of the reorganization managers theretofore made was "vacated and suspended." They had been designated strictly in accordance with the provisions of the Plan, and we think the court was without authority to summarily remove them, especially without cause and without an opportunity to be heard.

Notwithstanding the fact that the approval of these reorganization managers had been "vacated and suspended," the court in the same order directed that they and the trustee file reports on or before November 26, 1946, "showing what each of them had done, is doing, and contemplates doing, to carry out and put into effect the plan of reorganization." In conformity with this direction, such reports were filed and a hearing was had on November 26, 1946. These reports were considered and the testimony of one witness connected with the legal firm designated by the court to represent the trustee was heard. Much is said concerning these reports and the testimony of this witness, most of which we think is beside the point and immaterial to the issues raised on this appeal.

At the conclusion of the hearing, on November 27, 1946, the fifth order involved in this appeal was entered, which in a large measure supersedes the prior orders. In this order it is recited that on October 21, 1946, when the Plan of Reorganization was confirmed, "it appeared that there would be delay in the designation and approval of Reorganization Managers, and properly to progress the consummation of the plan, notwithstanding that delay, the Court directed the Trustee to employ counsel experienced in railroad reorganization matters, named by the Court, and proceed at once to initiate the steps necessary to the consmmation of the plan." The order further recites in effect that when the reorganization managers were approved by the court, the trustee and his counsel had made such progress in the effectuation of the Plan that the reorganization managers were "directed by the Court not to employ other counsel, and to proceed with the exercise of their authority under the plan." The order recites as the reason for the order suspending the order approving the reorganization managers that "delay was being encountered in taking certain steps essential to an expeditious reorganization, and that further delay was threatened." The order also states:

"The plan of reorganization does not in terms deal with the particular circumstances and the emergency situation which has developed herein except by the provision that the Court may cure any defect and supply any omission necessary to carry out the plan effectively."

206

Thus it appears that the court by this order attempted to justify its previous orders upon two grounds, (1) a fear that there would be delay in the consummation of the Plan, and (2) that at the time the managers were approved (November 15, 1946), the trustee and his counsel had made such progress in the effectuation of the Plan that it was unnecessary for the reorganization managers to employ counsel, as they were authorized to do under the Plan. We think the first ground is wholly without merit and that the second ground is beside the point. Obviously, there was no reason on October 21, 1946 (the same day the Plan was confirmed) for thinking that reorganization managers designated as provided by the Plan would delay its execution, yet on that very day the court provided a means of its own for the execution of the Plan, contrary to its plain provisions. It would also appear that there was no basis for charging the reorganization managers designated under the Plan with delay during the time required by the court to make up its mind as to whether it would approve their appointment. It would appear equally certain that they cannot properly be charged with delay even after their approval, in view of the fact that the court stripped them of their prerogatives as set forth in the Plan. Thus with their authority impaired to the point where it was doubtful if they had a right to perform any function, it is difficult to discern how they could have been reasonably expected to make any progress in the execution and carrying out of the Plan. That the court was anxious to see the Plan expeditiously put into effect is to be commended, but speed cannot be indulged in at the expense of the rights of parties as fixed by a Plan. Therefore, we think that it is immaterial to the issues raised on this appeal that the trustee and his counsel had made progress, if such be the fact, in the carrying out of the Plan. It is no answer to the charge that their appointment was unauthorized and illegal.

Neither do we think there was an emergency situation which justified the course pursued by the court. If, however, there was any emergency existing on November 27, it was of the court's own making. Neither do we agree that there was

any defect or omission in the Plan which justified the court's action. In fact, the provisions of the Plan so far as they relate to the issues before us are written in such plain, clear and unambiguous language as to leave no room for doubt as to their meaning.

The court in its order of November 27 directed "that John E. Gavin, William T. Faricy and Claude A. Roth be, and they hereby are appointed by the Court as Reorganization Managers under the plan of reorganization herein." (Gavin was one of the original designees.) These Court's designated managers were not appointed under the Plan; in fact, they were appointed in contravention of its specific terms. Assuming that the removal of Gavin, Keehn and Eben was proper (which assumption we think is not tenable), and that a vacancy thereby existed, the court again ignored the Plan, which clearly provided the manner in which successor-managers were to be designated. It provides:

"If there be any vacancy, however, created, after the appointments are made, the successor reorganization manager shall be designated by the party who designated the reorganization manager whose position has become vacant, subject to the approval of the court."

The court at the hearing on November 27 further demonstrated its displeasure for the provision in the Plan pertaining to the appointment of reorganization managers by stating:

"* * * the reorganization managers are sort of vermiform appendices, without any useful function. But we have them, and we will get along with them if we can."

Again we think that if the court entertained that view as to the reorganization managers, it should have been given effect at the time it considered the merits of the Plan, as a prerequisite to its approval. It is true, of course, that the court had the authority and the duty, both under the Act and by the provisions of the Plan, to supervise its execution. Such authority, however, did not confer upon the court the right to substitute a means of execution of its own contrary to and in derogation of the

provisions of the Plan. The duties and responsibilities of the reorganization managers in the execution and carrying into effect its provisions were as definite and certain as those of the court in its supervisory capacity. And the fact that the court might have thought that its means was better or more advantageous to the interested parties than that provided by the Plan can furnish no excuse for depriving the reorganization managers of their duties and responsibilities. To think otherwise is to work an injustice upon the creditors whose required assent to the Plan was procured on its stated terms and conditions, including those for its execution. In this connection, it is pertinent to observe that the means for the execution of a Plan of Reorganization is a positive requirement of the Act. Sec. 77, sub. b (5).

We desire to make it plain that nothing said in this opinion is intended to reflect upon the court's appointed counsel for the trustee, Messrs. Sidley, Austin, Burgess and Harper. The court evidently had great confidence in their ability to promptly and expeditiously carry the Plan into effect. So have we. Again, however, this is no answer to the contention that the orders complained of were unauthorized.

It may be well at this point to call attention to a few of the cases for the purpose of showing the limited authority which is given the court under Sec. 77, and particularly after a plan has been approved. In Palmer et al. v. Commonwealth of Massachusetts, 308 U.S. 79, 87, 60 S.Ct. 34, 38, 84 L.Ed. 93, the court stated:

"But the whole scheme of § 77 leaves no doubt that Congress did not mean to grant to the district courts the same scope as to bankrupt roads that they may have in dealing with other bankrupt estates."

In Ecker et al. v. Western Pacific Railroad Corporation, 318 U.S. 448, 468, 63 S.Ct. 692, 705, 87 L.Ed. 892, the court stated:

"When examined to learn the purpose of its enactment, section 77 manifests the intention of Congress to place reorganization under the leadership of the Commission, subject to a degree of participation by the court."

In Continental Illinois Nat. Bank & Trust Co. v. Chicago, Rock Island & Pacific Ry. Co., 294 U.S. 648, 672, 55 S.Ct. 595, 604, 79 L.Ed. 1110, the court in referring to Sec. 77 stated:

"As outlined by that section, a plan of reorganization, when confirmed, cannot be distinguished in principle from the composition with creditors authorized by the act of 1867, as amended by the act of 1874."

While we find no case exactly in point, numerous courts have construed the court's authority in connection with the execution of a plan under Sec. 77 (B). This court, for instance, in In re Corona Radio & Television Corporation, 7 Cir., 102 F.2d 959, 963, held that the court was without authority to direct the execution of a plan in a manner inconsistent with its terms. To the same effect is In re Pilsener Brewing Co., 9 Cir., 79 F.2d 63, 68, and In re Diversey Building Corporation, 7 Cir., 141 F.2d 65, 68. It has also been held that a plan of reorganization is, when certified, approved, accepted and confirmed, in effect a binding contract between a debtor, the security holders and all other parties concerned. Downtown Inv. Ass'n v. Boston Metropolitan Buildings, Inc., 1 Cir., 81 F.2d 314; American United Life Ins. Co. v. Haines City, Fla., 5 Cir., 117 F.2d 574.

 Counsel for appellees in their brief and argument in this court go even further than the court in attempting to justify the orders complained of. For instance, it is argued: "Particularly fresh in the Judge's mind was the recent hearing on fees in connection with the approval of the Plan." In this connection, it is pointed out that appellants filed with the Interstate Commerce Commission excessive claims for compensation and reimbursement of expenses. Assuming that such is the case, we think it is irrelevant to the orders under attack. If the purpose of such contention is to impugn appellants' motive or integrity, it is sufficient answer to state that the application for fees referred to and the action of the Commission thereon took place long before October 21, 1946, when the Plan was approved by the court. Such activities certainly were as "fresh in the Judge's mind" at that time as when he later entered the

orders complained of. If there was anything in appellants' previous conduct which indicated that it was undesirable that they be given the right under the Plan to designate the reorganization managers, it was a matter for the court's concern before the Plan was approved rather than subsequently. Furthermore, appellants appear to have played an important part in the formulation of the Reorganization Plan. The Commission in its report of April 25, 1946 stated:

"Counsel and the committee and its advisers, on and after April 17, 1945, concluded the negotiations which led to agreement with the Gulf, Mobile & Ohio on the terms of the plan, and took the lead in proceedings which thereafter culminated in approval of the plan by the Commission and the court * * *."

Appellees further argue that the court properly exercised its discretion because appellants attempted to block the reorganization and circumvent Sec. 77, sub. c (12). At this point it is pertinent to recall that the court in its order of November 13, 1946 directed its clerk to forward to the Interstate Commerce Commission the petition of the trustee to prescribe maximum limits of expenses pursuant to Sec. 77, sub. c(12). The clerk complied with the direction of the court in this respect. Thereupon, New York counsel for the appellant Committee, under date of November 15, 1946, directed a letter to the Commission opposing the petition "on the ground that the Trustee has no power to put into effect and carry out the Plan of Reorganization." The letter also called attention to the provision of the Plan by which such power was lodged in the reorganization managers. On November 21, 1946, appellants by the same New York counsel filed with the Commission an answer to the trustee's petition in which was set forth the provisions of the Plan as well as the orders complained of designed to show that the latter were entered without authority. It was asserted in such answer that the execution of the Plan by the trustee would be in violation of the Plan and would cast a serious doubt and cloud upon the title of the G. M. & O. and on other interested parties. It was also asserted that Sec. 77, sub. c(12), was without application because the Plan of Reorganization provided that the compensation and expenses of those employed in carrying out the Plan should be paid by the G. M. & O.

Appellees assert that by this action the appellant Committee "immediately undertook to block the required proceeding before the Interstate Commerce Commission," and that "It will be seen that while pretending to name a Reorganization Manager to participate in the consummation of the Plan, appellant was actually moving to defeat the consummation of the Plan under and pursuant to the vital limitations imposed by subsection c(12) * * *."

Thus it will be observed that the attack which appellants sought to make before the Commission was substantially the same as that made here, that is, that the court was acting without authority and in contravention of the terms of the Plan. We are of the view that appellants were not only within their rights in attacking the orders of the court before the Commission but that they would have been derelict in their duty if they had failed to do so.

We have heretofore quoted the provision of the Plan conferring broad and exclusive powers upon the reorganization managers in the execution of the Plan. We repeat this provision, so far as material to the instant discussion. It provides:

"Subject to limitations of law, including the limitations of subsection 77 (c) (12) of the Bankruptcy Act, the reorganization managers shall have full discretionary power * * * to fix the compensation of trustees, depositaries, counsel, and others whose services they may employ in the execution of their powers, which, together with all reasonable expenses, including counsel fees, shall be paid by the Gulf, Mobile and Ohio Railroad Company * * *."

Sec. 77, sub. c (12), provides, so far as here material:

"Within such maximum limits as are fixed by the Commission, the judge * * * may make an allowance, to be paid out of the debtor's estate, for the actual and reasonable expenses * * * incurred in connection with the proceedings and plan and reasonable compensation for services

in connection therewith by trustees under indentures, depositaries and such assistants as the Commission with the approval of the judge may especially employ."

■ It is true, as appellees assert, that the provision of the Plan imposing upon the railroad the obligation of paying the expenses incurred in the execution of the Plan is "subject to limitations of law, including the limitations of Sec. 77 (c) (12)." Obviously, this limitation in the Plan is of no consequence unless the statutory provision is controlling. We think it is not. The latter expressly limits the allowances to those payable "out of the debtor's estate." This fact is emphasized in Reconstruction Finance Corporation v. Bankers Trust Co., 318 U.S. 163, 166, 63 S.Ct. 515, 87 L.Ed. 680. In the instant case, the fees and expenses incurred are not to be paid out of the debtor's estate. The Plan specifically provides that the compensation and expenses of those authorized to execute the Plan "shall be paid by the Gulf, Mobile & Ohio Railroad Company." We must assume that there is nothing wrong with a plan containing such a provision; otherwise the Commission would not have certified and the court would not have approved it. We think the creditors and interested parties whose assents were necessary to the validity of the Plan are entitled to have this provision as well as others respected and put into effect.

We might go further and state that even though it be assumed that appellants' action before the Commission, taken in response to the trustee's petition, was ill-advised, still there would be no basis for properly charging them with blocking the execution of the Plan. It cannot be said that their action was frivolous or not taken in good faith. Certainly the very least that can be said is that they presented a meritorious legal question, which they were entitled to do before the Commission as they have before this court. Furthermore, as already pointed out, the court entered upon a course contrary to the provisions of the Plan prior to appellants' action now asserted to have blocked consummation of the Plan.

■ In conclusion, we regret to relate that the court below during the hearing on November 27, 1946, in discussing the provision of the Plan imposing upon the G. M. & O. the obligation of paying the compensation and expenses incurred in its execution, made inquiry as to whether the railroad was represented in court. Upon being informed that its general counsel was present, the court threatened it with contempt "if any engagement is made or if any payment is made by way of attorneys fees or expenses of attorneys or otherwise in and about this reorganization other than within maximum limits fixed by the Interstate Commerce Commission and approved within those limits by this Court." In our opinion, this threat of contempt directed at the railroad was not only improper but without justification. After all, the G. M. & O. was merely taking over the assets of the debtor corporation; in effect it was the purchaser of those assets. It was solvent and we assume possessed of officials capable of attending to its business. It is doubtful if the court had any jurisdiction over its funds and certainly no authority over the railroad other than to supervise its part in the execution of the Plan. As already shown, the railroad was obligated to pay the expenses of carrying the Plan into effect. Even though there had been a serious legal question as to its obligation in this respect, which we think there was not, such a question could have been more appropriately decided in the traditional judicial manner than by threatened contempt.

The orders appealed from are reversed, with the direction that they be vacated and set aside and that the Plan of Reorganization approved by the court be consummated according to its terms and provisions.