No. 24. St. Joe Paper Co. et al. *v.* Atlantic Coast Line Railroad Co., *ante,* p. 298;

No. 33. Lynch et al. *v.* Atlantic Coast Line Railroad Co., *ante,* p. 298;

No. 36. Aird et al., Trustees, *v.* Atlantic Coast Line Railroad Co., *ante,* p. 298; and

No. 37. Welbon et al. *v.* Atlantic Coast Line Railroad Co., *ante,* p. 298. Petitions for rehearing denied. Mr. Justice Black, Mr. Justice Jackson, and Mr. Justice Clark took no part in the consideration or decision of these applications. Memorandum filed by Mr. Justice Douglas.

Mr. Justice Douglas.

As I was in dissent when these cases were decided on the merits, I am not entitled to vote for a rehearing, unless one of the four Brethren who joined in the opinion of the Court first votes to grant it. Hence I do not urge reconsideration of the decision of the Court that mergers of railroads under § 77 of the Bankruptcy Act cannot be initiated by the Interstate Commerce Commission but must be "proposed by the merging carriers."

There is, however, a phase of the case which was not considered by the Court and which, if meritorious, will change the result of the decision.

The plan of reorganization approved by the Commission (see 282 I. C. C. 195, 213) provides that the assets of the debtor, Florida East Coast R. Co., shall be vested in the Atlantic Coast Line in one of three ways:

> (1) "by merger of the debtor" into Atlantic Coast Line;
>
> (2) by "consolidation of the debtor with" Atlantic Coast Line; or
>
> (3) "if the court shall approve, by transfer and conveyance" of the property of the debtor by the trustees to Atlantic Coast Line.

Mergers and consolidations in corporation law are statutory procedures. They are devices whereby two corporations can become one entity, either by the absorption of one corporation by the other or by the creation of a new corporation out of the two old ones. The statutory procedures vary from state to state. But, all problems of bankruptcy reorganization aside, they are always effectuated by a consensual agreement between the corporations being merged or consolidated. The issue discussed in the opinion of the Court of April 5, 1954, pertained to the question as to what constitutes the necessary consensual agreement for a merger or consolidation when one of the corporations is a railroad company being reorganized under § 77 of the Bankruptcy Act. Someone's consent is obviously necessary. The majority held that it was necessary to get consent from "those who in the absence of § 77 would wield the corporate merger powers . . . ." 347 U. S. 298, 309, n. 12. The minority maintained that those who under § 77 had the power to approve a plan of reorganization had the power to give consent to a merger or consolidation.

That issue is not present on the phase of the case now tendered for decision. Even though the reorganization may not be consummated under the merger and consolidation provisions of the plan, it may be consummated under the provision of the plan which allows the transfer and conveyance, with the approval of the reorganization court, of the property of the debtor to Atlantic Coast Line. Trustees in bankruptcy have traditionally had the right to dispose of the bankrupt's assets under the supervision of the bankruptcy court. That power is as ancient as bankruptcy itself.

Why may not the trustees of Florida East Coast sell its property to Atlantic Coast Line, if the reorganization court approves?

Section 5 (2) of the Interstate Commerce Act must, of course, be complied with whether there be a merger, a consolidation, or a purchase of property. But note what § 5 (2) (a) says when a *purchase* of property is involved:

"It shall be lawful, with the approval and authorization of the Commission, as provided in subdivision (b) of this section—

"(i) . . . for any carrier . . . to purchase . . . the properties . . . of another . . . ." 49 U. S. C. § 5 (2) (a).

We learn from the decisions of the Commission that when a *purchase* of assets is involved, only the purchaser need make application for the unification. There are at least eight cases which illustrate the procedure.

Of these eight, five involve intracorporate transactions, *e. g.*, purchases of the property of a subsidiary by a parent. See *Erie R. Co. Purchase,* 254 I. C. C. 486; *Chesapeake & O. R. Co. Purchase,* 261 I. C. C. 239; *Southern R. Co. Purchase,* 275 I. C. C. 724; *Seaboard R. Co. Acquisition,* 257 I. C. C. 584 (purchase of former subsidiary by reorganized parent). Cf. *Wheeling & L. E. R. Co. Control,* 254 I. C. C. 632 (stock acquisition). Three of the eight cases involve transactions which have all the elements of arm's-length bargaining. See *Gulf, M. & O. R. Co. Purchase,* 261 I. C. C. 623 (purchase of a former jointly-owned subsidiary at a foreclosure sale); *Cambria & I. R. Co. Control,* 275 I. C. C. 360 (stock acquisition by noncarrier); *Gulf, M. & O. R. Co. Purchase, Securities,* 261 I. C. C. 405, approving purchase contemplated by the plan of reorganization in *Alton R. Co. Reorganization,* 261 I. C. C. 343. The latter case involved an arm's-length transaction in which the purchase was worked out in a § 77 reorganization, but approved under § 5 (2) on the application of the purchaser alone. The reorganization plan was confirmed

by the reorganization court and the purchase consummated. See *In re Alton R. Co.*, 159 F. 2d 200.

It, therefore, seems that a sale of assets may be approved under § 5 (2) on the application of the purchaser alone. In the *Erie* case, *supra,* the Commission specifically held that the vendors were not necessary parties to an application under § 5 (2). There the application had been made jointly by the vendee-parent and the vendor-subsidiaries, and the Commission dismissed the application of the vendors.

In the present cases, Atlantic Coast Line has received the permission of the Commission under § 5 (2) to purchase the assets of Florida East Coast, subject to the conditions of § 77 of the Bankruptcy Act. No attempt is made to challenge the adequacy of the findings of the Commission under § 5. If the substantive provisions of § 5 are satisfied, and if only the purchaser need apply under § 5, why do the bankruptcy trustees lack authority to dispose of this property to Atlantic Coast Line, once the requirements of § 77 are satisfied?

It is not apparent why that authority is lacking. Bankruptcy trustees from the beginning have had the power of sale, subject to control by the bankruptcy court.

I, therefore, thought it appropriate that these cases be put down for a rehearing limited to the following question:

It being decided that the debtor may not on this record merge or consolidate with Atlantic Coast Line, may the bankruptcy court nevertheless authorize the transfer of the property of the debtor to Atlantic Coast Line, if all the requirements of § 77 are satisfied?

This point is a substantial one which has not been ruled upon by any court. Since the Court now denies these petitions, the question will be open on remand of the cases.